# AKEEM CORRASPE, Appellant/Defendant
## v.
# PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff

S. Ct. Crim. No. 2008-0040

Supreme Court of the Virgin Islands

March 9, 2010

W. JOHN AMERLING, ESQ., Sanford, Amerling & Associates, St. Croix, USVI, *Attorney for Appellant.*

RICHARD S. DAVIS, ESQ., Assistant Attorney General, Department of Justice, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(March 9, 2010)

CABRET, J. This appeal concerns a global plea agreement entered into by the appellant, Akeem Corraspe, disposing of numerous criminal charges filed against him by the People of the Virgin Islands. The charges, which included murder, firearms violations and armed robbery, arose from separate incidents and were being prosecuted under different criminal actions. Thus, negotiating the global plea required coordination of the various prosecutors and appointed defense attorneys assigned to

each of the prosecutions. The final negotiations occurred during a global plea conference conducted by a judge assigned to one of the criminal prosecutions. At the conclusion of the conference, Corraspe pled guilty to some of the offenses pursuant to the global plea bargain, and other charges were dismissed. Before sentencing, however, Corraspe moved to withdraw the plea, claiming that it was coerced and the product of ineffective assistance of counsel. Following an evidentiary hearing, the Superior Court denied Corraspe's motion and subsequently sentenced him for the crimes to which he pled guilty. Corraspe filed this appeal, asserting that the Superior Court judge violated Rule 11 of the Federal Rules of Criminal Procedure by participating in the plea discussions and that he received ineffective assistance of counsel. For the reasons which follow, the Superior Court's denial of Corraspe's motion is affirmed.

## I. FACTS AND PROCEDURAL BACKGROUND

The charges against Corraspe stem from four separate criminal incidents. In the first, the People alleged that Corraspe fired several gunshots into a vehicle where the victim was seated, killing the victim. The People charged Corraspe with first degree murder, first degree assault, unauthorized possession of a firearm during the commission of first degree murder, unauthorized possession of a firearm during first degree assault, and unauthorized possession of ammunition. (ST-07-CR-0000230). In a second, unrelated prosecution, the People charged Corraspe with unauthorized possession of a firearm after a police officer, responding to a report of gunfire, allegedly observed Corraspe running with a machine gun in his hand. (ST-07-CR-0000199). In two other prosecutions, the People charged Corraspe with a total of two counts of armed robbery after he allegedly robbed the same victim at gunpoint on two separate occasions. (ST-07-CR-0000258 and ST-07-CR-0000259). The criminal cases were assigned to different judges, Corraspe had separate appointed defense attorneys, and when he was arraigned in each of the cases, Corraspe pled not guilty to the charges.

As the cases progressed toward trial, the prosecutors and defense attorneys attempted to resolve all of the charges under a single, global plea agreement. To facilitate a plea, on November 26, 2007, a global status and change of plea hearing was convened before the trial judge presiding over ST-07-CR-0000199, the machine gun possession prosecution. The judge was authorized by the other presiding judges to

dispose of all the cases, and the prosecutors and defense attorneys from the various cases appeared at the hearing. When the hearing commenced, the judge informed the attorneys that she was receiving conflicting reports from the parties about whether a global plea agreement had been reached. Because jury selection dates were approaching in at least some of the cases, the judge informed the parties: "I have to know one way or the other" whether there is a global plea agreement. (J.A. at 55.) And, since the judge was not going to extend the trial date in the case assigned to her, she stated that as far as she was concerned "this is the day." (J.A. at 56.)

The various attorneys then reported on the status of their attempts to reach a global plea agreement. It appears that while the parties thought they had reached an agreement, the attorney appointed to represent Corraspe on the charge of unauthorized possession of a firearm objected to the agreement. When it became apparent to the court that this attorney had rejected the plea offer due to a misunderstanding he had concerning the nature and mechanics of the global plea agreement, the judge stated: "I still want an opportunity to. speak to [appointed defense counsel] because he's not doing his client a service. You're not doing your client a service to have that one dangling out." (J.A. at 59.) After questioning the attorney about his objections to the agreement and confirming that he was indeed confused about the nature of the global plea, the trial judge stated that if Corraspe goes to trial on the firearm charge, "you're exposing him to more than [the prosecutors] are letting you be exposed to for this trial." (J.A. at 62.) When another defense attorney informed the court that he believed all defense counsel needed to get together and speak with Corraspe, the judge responded:

> You need to probably speak to your client and maybe assist, because I know [you and the other appointed defense attorneys] may be a little more acquainted with the procedures . . . . I'm not sure whether everyone is pulling in the right direction for the least amount of exposure for [Corraspe].

(J.A. at 62.) The court then temporarily recessed the proceedings to provide the various defense attorneys an opportunity to discuss the matter.

In accordance to the court's instructions, the defense team convened in the jury deliberation room where they further discussed the plea offered by the People. At some point during the recess, one of the prosecutors

475

informed the defense attorneys that the People were withdrawing their previous offer of a recommended sentence of fifteen years on the murder charge and would instead offer a recommendation of twenty years incarceration. Inasmuch as Corraspe had already rejected the fifteen year offer, the lead defense attorney in the murder case stood up and said, "let's go, let's get out there, let's get this over with, we've been here long enough, let's get ready to go to trial." (J.A. at 333.) Corraspe and his attorneys returned to the courtroom to inform the judge of the status. While they initially stated that negotiations had broken down, during the colloquy with the judge Corraspe apparently whispered to one of his attorneys that he had changed his mind and wanted to accept the People's plea offer. The attorney thus interrupted the colloquy and announced: "Your Honor, there may be a sudden change of heart here." (J.A. at 66.)

Following another recess, the attorneys returned to the courtroom, and one of the prosecutors informed the court that they had reached an agreement:

> Your Honor, the Government has offered to the defendant, and defendant has agreed, as part of the global plea offer that he would plea [sic] guilty to an Amended Information in criminal number F230/2007 to second degree murder. The Information would have to be amended, Your Honor. It's understood that the People would dismiss the remaining counts in F230/2007 and recommend a sentence of 20 years, Your Honor. It's also agreed that the Government would dismiss in its entirety F199/2007[, the firearm possession charge]. The Government would also dismiss in its entirety F258 of 2007[, one of the armed robbery charges]. It's agreed that defendant would plead guilty to one count of the Amended Information in F259 of 2007 to third degree robbery, Your Honor. The Government would make no allocution and would agree that any sentence that is imposed would run concurrent to the sentence imposed in F230/2007, Your Honor.

(J.A. at 69-70.)

After discussing with the attorneys the language of the amendments to the charges and informing them that she would not accept any plea to amended charges which changed the facts underlying the charges, the judge had Corraspe sworn in and questioned him about the plea. During the court's inquiry, the judge ensured that Corraspe understood his rights

and that he would be waiving certain rights if the court accepted his plea. The court further examined Corraspe to ensure that he understood the charges he was pleading guilty to, the possible sentences, that he was satisfied with the advice and assistance of his attorneys, and that he was entering the plea voluntarily. When Corraspe exhibited some confusion concerning the court's sentencing authority, the judge addressed him further to ensure that he fully understood those matters. The clerk then read the amended charges to Corraspe, and Corraspe pled guilty to the charges. Upon determining that there was a factual basis for the plea and that Corraspe still maintained his guilt after hearing these facts, the court accepted the plea. The court scheduled sentencing for January 10, 2008.

Before the scheduled sentencing, Corraspe sent a note to the judge stating that he wanted to withdraw his plea because he was dissatisfied with the assistance of his appointed attorneys and because a friend told him that certain evidence against him could be suppressed. One of his attorneys in the murder case subsequently filed, on Corraspe's behalf, a formal motion to withdraw the plea, asserting as grounds not only ineffective assistance of counsel in the murder case, but also that those appointed attorneys and his mother pressured him into pleading guilty. The court scheduled an evidentiary hearing on the motion for January 31, 2008 to determine whether Corraspe had a fair and just reason for the withdrawal of his plea. Because Corraspe claimed that he received ineffective assistance of appointed counsel, the court appointed another attorney as special counsel to represent Corraspe on his motion to withdraw the plea.

At the hearing on Corraspe's motion, Corraspe testified that although he wanted to reject any plea offer, his attorneys and his mother kept pressuring him to accept the plea deal offered by the People. Thus, Corraspe claimed, his "mind wasn't . . . straight," (J.A. at 161) and he agreed to plead guilty.

Corraspe's defense attorneys in the murder case testified about their efforts to prepare for trial and negotiate a plea. Lead counsel on the murder case stated that he retained another attorney to assist in preparing the defense and used a law clerk in his office, Joe Breen, for legal research and to perform investigative duties such as locating and interviewing witnesses. Based on this trial preparation, lead counsel believed that the murder "case was defensible" (J.A. at 349), but testified that he nevertheless was of the opinion that the "plea agreement that was entered

into . . . was in the best interest of . . . Corraspe." (J.A. at 339.) Co-counsel in the murder case, who had "some very serious issues with the statements" (J.A. at 356) of the People's witnesses, testified that although Corraspe purportedly had an alibi witness and an eyewitness, these witnesses could not be located despite a continuance granted by the court for this purpose.

The trial court denied Corraspe's motion to withdraw his plea, finding that the evidence showed that he was not pressured into entering the plea and that Corraspe unequivocally stated at the plea hearing, under oath, that "he was making a free and informed choice in choosing to enter into the global plea arrangement." (J.A. at 38.) The court likewise rejected Corraspe's contention that he should be permitted to withdraw the plea due to ineffective assistance of counsel. In applying the standard articulated in *Hill v. Lockhart*, 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), the court reasoned that because Corraspe did not demonstrate his innocence through his two purported, but unfound witnesses, the asserted deficiencies in locating these witnesses did not constitute ineffective assistance of counsel. The court further reasoned that in the absence of any such witnesses, and in light of the substantial evidence against him and the potential sentence he faced upon being convicted of first degree murder, counsels' recommendation that he accept the global plea was reasonable. Finally, the court found that Corraspe was specifically questioned at the plea hearing about whether he was satisfied with the representation provided by his attorneys and he stated that he was. Citing these circumstances, the court found it an "inescapable conclusion" that Corraspe "made a tactical and strategic choice to plead guilty and he now seeks to withdraw the plea without showing how his attorneys failed to provide him effective and confident representation in accordance with the Sixth Amendment." (J.A. at 41.)

The Superior Court subsequently sentenced Corraspe to thirty years incarceration for his conviction of second degree murder and a consecutive term of ten years incarceration, three suspended, for his conviction of third degree robbery. Corraspe, represented by new appellate counsel, filed this appeal.

Corraspe asserts two issues on appeal. First, he claims that the Superior Court erred by participating in the plea discussions because judicial participation is prohibited by Rule 11(c) of the Federal Rules of Criminal Procedure. Second, Corraspe asserts that he received ineffective

assistance of counsel because his various attorneys did not object to the Superior Court's participation in the plea negotiations. Corraspe also points to the performance of his specially appointed plea withdrawal counsel and claims that this attorney failed to prepare for the proceedings and did not object to the procedure used by the court in conducting the proceedings.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over this criminal appeal pursuant to title 4, section 32(a) of the Virgin Islands Code, which provides that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law."

■ Because Corraspe did not raise the issue of judicial participation in the plea discussions in the Superior Court, we review his claim for plain error under Rule 52(b) of the Federal Rules of Criminal Procedure. *See United States v. Corso*, 549 F.3d 921, 928 (3d Cir. 2008). Under the plain error rule, Corraspe

> must show (1) that there was an error, i.e., a deviation from a legal rule, (2) that the error was plain, i.e., clear or obvious, and (3) that the error affected his substantial rights. But relief on plain-error review is in the discretion of the reviewing court, and even if all three conditions are met we will exercise our discretion to correct the unpreserved error only if [Corraspe] persuades us that (4) a miscarriage of justice would otherwise result, that is, if the error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.

*Id.* at 928-29 (citations and quotation marks omitted).

■ In reviewing Corraspe's claim that he received ineffective assistance of counsel, we employ the test articulated by the Supreme Court in *Hill*, 474 U.S. at 57, 106 S. Ct. at 369, that: " '[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness.' " *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 2065, 80 L. Ed. 2d 674 (1984)). In addition, " '[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different.' " *Id.* (quoting *Strickland,* 466 U.S. at 668, 694, 104 S. Ct. at 2068).

## III. DISCUSSION

### A. The Trial Judge's Participation In The Plea Negotiations Is Not Plain Error.

The mainstay of Corraspe's appeal is that the Superior Court judge erred by participating in the plea discussions because such participation is prohibited by Rule 11(c) of the Federal Rules of Criminal Procedure. Rule 11(c) prescribes the procedure for creating plea agreements under the federal rules and provides, in pertinent part, that "[t]he court must not participate in [the plea] discussions." The People seemingly concede the applicability of Rule 11(c) to plea proceedings in the Superior Court, and the parties presumably believe that the rule governed Corraspe's plea pursuant to Rule 7 of the Superior Court Rules.

Rule 7 provides, in pertinent part, that "[t]he practice and procedure of the Superior Court shall be governed by the Rules of the Superior Court and, to the extent not inconsistent therewith, by the . . . Federal Rules of Criminal Procedure . . . ." Thus, for Rule 11 to govern criminal pleas in the Superior Court, it must not be inconsistent with the Rules of the Superior Court. But the Superior Court has its own rule governing criminal pleas in that court, Rule 126 of the Superior Court Rules. And, while Superior Court Rule 126 is facially silent on whether the judge is permitted to participate in plea discussions, we must nevertheless determine whether the application of Rule 11(c) of the Federal Rules of Criminal Procedure is inconsistent with the Superior Court rule.[1]

We exercise plenary review over the interpretation of Rule 126, and our resolution of whether it is inconsistent with Rule 11(c) is guided by the rules of statutory construction. *See Enfield Green Homeowners Assn v. Francis,* 340 F. Supp. 2d 590, 592 (D.V.I. App. Div. 2004) (exercising plenary review over interpretation of rules); Norman J. Singer, *Southerland Statutes and Statutory Construction,* § 67:14 (6th ed. 2003) (recognizing that "in one form or another almost every rule of

---

[1] In *In re People,* 51 V.I. 374, 384 n.7 (V.I. 2009), we reserved the question of whether Rule 11 of the Federal Rules of Criminal Procedure applies to criminal proceedings in the Superior Court in light of Superior Court Rule 126.

construction for statutes finds application in the interpretation of the rules of practice"). Because we must determine whether the drafters of Rule 126 intended to permit judicial participation in plea discussions, we begin our analysis with the plain language of the rule. *See Gilbert v. People*, 52 V.I. 350, 369 (V.I. 2009). As stated above, Superior Court Rule 126 is silent on the issue and is not, therefore, facially inconsistent with Rule 11. Thus, the salient question is whether the drafters of Rule 126 intended for the absence of an express proscription on judicial participation to mean such conduct is permissible or whether they intended the void to be filled by the Rule 11 prohibition on judicial participation.

The history of the Superior Court Rules indicates that the drafters intended for Rule 126 to govern pleas in the Superior Court, to the exclusion of Rule 11. *See Singer, supra*, § 67:14 (recognizing that courts generally interpret rules of criminal procedure "in light of the history of their adoption"). This history shows that Superior Court Rule 7, which incorporates consistent federal rules into Superior Court practice, was first promulgated in 1975. *See* former 5 V.I.C. App. IV, Rule 7. The former version of Rule 7, like the current version, adopted the rules of federal practice in the Municipal Court of the Virgin Islands, now the Superior Court, "except where there [was] an express provision in the law or [municipal court] rules to the contrary." *See Gov't of the V.I. v. Quetel*, 18 V.I. 145, 149 (Terr. Ct. 1982) (quoting 5 V.I.C. App. IV, Rule 7). When Rule 7 was originally promulgated, Rule 11 of the Federal Rules of Criminal Procedure prohibited judicial involvement in plea discussions, *see* former FED. R. CRIM. P. 11(e)(1), and the Rules of the Municipal Court did not contain any provisions governing criminal plea procedures. *See generally* former 5 V.I.C. App. IV. Thus, there is no doubt that in 1975 the Rule 11 prohibition applied to criminal proceedings in the Municipal Court. Because neither the Municipal Court, nor its immediate successor, the Territorial Court, adopted any local rule to the contrary, this application continued until the Rules of the Territorial Court were generally amended in 1994 "to reflect modern conditions and the increased judicial autonomy granted by Congress to the people of the

Virgin Islands." *Preface to the First Gen. Amends to the Rules of the Sup. Ct. of the U.S. Virgin Islands.*[2]

▮▮▮ The 1994 amendments changed Rule 7 to its current form, but more importantly, added Rule 126 to govern plea agreements in what is now the Superior Court. While Rule 126 contains several provisions addressing various aspects of plea proceedings in the Superior Court, it is not as comprehensive as its federal counterpart, Rule 11, and does not expressly prohibit judicial participation in plea discussions. If the drafters of the 1994 amendments had not added Rule 126 as part of the amendments, Rule 11 would unquestionably still apply to plea proceedings in the Superior Court. But that is not the case, and we cannot ignore the fact that Rule 126 was added to the rules and that it did not contain the prohibition contained in Rule 11 that previously applied to criminal pleas in the Superior Court. The only reasonable explanation for the omission under these circumstances is that the drafters of Rule 126 intended to dispense with the previously incorporated federal rule prohibiting judicial participation in plea discussions. *See generally, Singer, supra,* § 48:3 ("Knowledge of circumstances and events which comprise the relevant background of a statute is a natural basis for making findings about the purpose of a statute or the mischief it was to remedy."). Furthermore, if we were to conclude that Rule 11 still applies to plea proceedings in the Superior Court, notwithstanding the addition of Rule 126, then Rule 126 would be rendered wholly superfluous. The rules of construction dictate that we must avoid an interpretation that has such an effect. *TRW Inc. v. Andrews,* 534 U.S. 19, 31, 122 S. Ct. 441, 449, 151 L. Ed. 2d 339 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (citation and quotation marks omitted)); *United States v.*

---

[2] As explained in the *Preface,* under the 1984 amendments to the Revised Organic Act of 1954, Congress enabled the Virgin Islands Legislature to expand the Territorial Court's criminal jurisdiction and granted the Territorial Court authority to promulgate rules governing the practice and procedure in that court. *See also* Revised Organic Act of 1954, § 21(b), (c), 48 U.S.C. § 1611, *reprinted in* V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 149-150 (1995) (preceding V.I. CODE ANN. tit. 1). Pursuant to this authority, the Territorial Court promulgated the 1994 amendments, which included the enactment of Rule 126, and effective January 1, 1994, the Legislature expanded the court's criminal jurisdiction to cover "all criminal actions." 4 V.I.C. § 76(b) (1997).

*Cooper*, 396 F.3d 308, 312 (3d Cir. 2005) ("It is a well known canon of statutory construction that courts should construe statutory language to avoid interpretations that would render any phrase superfluous.") Accordingly, we conclude that the application of Rule 11(c)(1) of the Federal Rules of Criminal Procedure is inconsistent with Rule 126 and that the federal rule, therefore, does not govern plea proceedings in the Superior Court. Thus, the Superior Court judge in the instant case did not violate Rule 11 by participating in the plea discussions at issue.

 However, while Rule 126 does not prohibit judicial participation in plea discussions, such participation must be carefully scrutinized to ensure that it does not adversely affect the voluntariness of the defendant's plea. *See State v. Warner*, 762 So.2d 507, 513 (Fla. 2000) (ruling that although Florida does not prohibit judicial involvement in the plea bargaining process, "judicial involvement must be limited to minimize the potential coercive effect on the defendant, to retain the function of the judge as a neutral arbiter, and to preserve the public perception of the judge as an impartial dispenser of justice" (citations and quotation marks omitted)); *Cripps v. State*, 122 Nev. 764, 137 P.3d 1187, 1189 (2006) ("[E]ven states that permit some judicial involvement do so cautiously with awareness of the negative potential effect it can have on both the voluntariness of the plea and the appearance of fairness."); *State v. Sawyer*, 183 Ohio App. 3d 65, 915 N.E.2d 715, 720 (Ohio Ct. App. 2009) ("A trial judge's participation in the plea bargaining process will be carefully scrutinized to determine if it affected the voluntariness of the defendant's plea." (citation and quotation marks omitted)); *see also State v. Milinovich*, 269 Mont. 68, 887 P.2d 214, 216 (1994) ("The Legislature did not identify limits of court participation in the plea agreement process. We must, therefore, consider on the record here, whether the court's participation in the plea agreement process was impermissible."). Such scrutiny is required because a judge's participation in plea discussions can have unintentional, but significant coercive effects on a defendant's decision to accept or reject a plea offer.[3]

---

[3] Judicial participation in plea proceedings can also affect a judge's objectivity as the judge presides over the trial and sentencing. As recognized by the court in *Cripps*:

A judge's involvement in the plea process detracts from the judge's objectivity by making it difficult for a judge to subsequently assess the voluntariness of the plea objectively, by posing an inherent risk that, if the negotiations ultimately fail, the judge's impar-

*See State v. Simms*, 981 So.2d 838, 841-42 (La. Ct. App. 2008) (recognizing that "judicial participation in the discussions can create the impression in the mind of the defendant that he would not receive a fair trial were he to go to trial before this judge" (quoting ABA STANDARDS FOR CRIMINAL JUSTICE: Pleas of Guilty § 3.3(a) Commentary 73 (Approved Draft 1968)));[4] *Cripps*, 137 P.3d at 1190 (recognizing that "judicial involvement may coerce the defendant into an involuntary plea that he would not otherwise enter and cause the defendant to accept a plea only out of fear of offending the judge and incurring unfavorable rulings at trial or a more severe sentence after trial." (citations and quotation marks omitted)).[5]

■ In the instant case, Corraspe has not shown that the judge's participation in the plea discussions resulted in an involuntary plea. While we urge judges to exercise caution when participating in plea discussions, in this case both the record and Corraspe's brief are devoid of any indication that the court's comments coerced him into pleading guilty. In fact, while Corraspe repeatedly asserted below that his mother and defense attorneys pressured him into pleading guilty, he never hinted, much less demonstrated that the judge's comments during the change of plea hearing influenced his decision to plead guilty or to later seek withdrawal of his plea. And, in his appellate brief, Corraspe does not even suggest that he would not have entered the plea but for the trial judge's comments. Instead, Corraspe relies exclusively on his argument that the

---

tiality during trial will be diminished, and by detracting from the judge's objectivity in post-trial matters such as sentencing and motions for a judgment of acquittal. Additionally, in the course of plea negotiations, the judge may obtain information about the accused's guilt or innocence that, even if well intentioned, may diminish judicial objectivity.

137 P.3d at 1190 (citation and quotation marks omitted).

[4] The current standards of the American Bar Association provide that "[a] judge should *not ordinarily participate in plea negotiation discussions among the parties." See* ABA STANDARDS FOR CRIMINAL JUSTICE: PLEAS OF GUILTY, Standard 14-3.3(d) (3d ed. 1999).

[5] In light of the risks posed by judicial participation, many states, like the federal rule, prohibit any judicial involvement in plea discussions. *See Warner*, 762 So.2d 507, 513 (recognizing that "at least six states (Alaska, Pennsylvania, Texas, Utah, West Virginia, and Wisconsin) . . . disallow judicial participation in plea bargaining"); RONALD WRIGHT & MARC MILLER, THE SCREENING/BARGAINING TRADEOFF, 55 STAN. L. REV. 29, 89 & n. 223 (2002) (noting that Arkansas, Colorado, Delaware, Georgia, Maine, Massachusetts, Mississippi, New Mexico, North Dakota, South Dakota, Tennessee, Virginia, Washington, and West Virginia prohibit judicial involvement in plea negotiations).

judge's participation violated the bright-line prohibition on judicial involvement contained in Rule 11 of the Federal Rules of Criminal Procedure. Furthermore, during the Superior Court's examination of Corraspe regarding the consequences of his plea, Corraspe acknowledged that his decision to plead guilty was not motivated by any threats and that he was entering the plea voluntarily. Under these circumstances, we conclude that Corraspe has not shown that the judge's participation in the plea discussions constituted error, much less plain error.

### B. Corraspe Has Not Demonstrated That He Was Denied Effective Assistance Of Counsel.

Corraspe also asserts that he was denied effective assistance of his appointed trial counsel and of his specially appointed plea withdrawal counsel. We disagree.

■ The right to counsel is guaranteed by the Sixth Amendment to the United States Constitution. *Strickland*, 466 U.S. at 684, 104 S. Ct. at 2063. The Sixth Amendment applies to the Virgin Islands through Section 3 of the Revised Organic Act of 1954,[6] and the right to counsel under the Sixth Amendment encompasses the right to effective assistance of counsel. *McAleese v. Mazurkiewicz*, 1 F.3d 159, 166 (3d Cir. 1993).

■ ■ Corraspe claims that his appointed trial counsel were ineffective because they did not object to the Superior Court's participation in the plea negotiations which, he contends, violated Rule 11(c) of the Federal Rules of Criminal Procedure. For the reasons discussed above, however, we conclude that Corraspe has not demonstrated that he was denied effective assistance of counsel on this ground. Again, the Rule 11(c) proscription does not apply in Superior Court plea proceedings, and Corraspe has not shown that the judge's comments rendered his plea involuntary. Thus, Corraspe has not demonstrated that his attorney's representation was deficient for failing to object, and even if he had made such a showing, he has not established that he was prejudiced by an unprofessional error. *See Hill*, 474 U.S. at 59, 106 S. Ct. at 370 (ruling that to establish prejudice, a defendant must demonstrate "that there is a reasonable probability that, but for counsel's

---

[6] Revised Organic Act of 1954, § 3, 48 U.S.C. § 1561, *reprinted in* V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 86-88 (1995) (preceding V.I. CODE ANN. tit. 1).

errors, he would not have pleaded guilty and would have insisted on going to trial").

 Unlike Corraspe's claim that his appointed trial counsel provided ineffective assistance, his claim that his specially appointed plea withdrawal counsel was ineffective was not raised below. "Ordinarily, a claim of ineffective assistance of trial counsel is not appropriately reviewed for the first time on direct appeal, but must be raised by a collateral proceeding because the necessary facts about counsel's representation of the defendant have not been developed." *Rivera v. Gov't of the V.I.*, 981 F. Supp. 893, 900 (D.V.I. App. Div. 1997) (citations omitted). However, we may review such a claim on direct appeal if we conclude that we have " 'an adequate record and thus an additional evidentiary hearing need not be conducted to develop the facts.' " *Id.* (quoting *Gov't of the V.I. v. Zepp*, 748 F.2d 125, 133 (3d Cir. 1984)). For the following reasons, we find that the record is adequate to address Corraspe's contentions and that record shows he is not entitled to relief.

 Corraspe points to three alleged deficiencies in his plea withdrawal counsel's performance which he believes warrants a reversal of the trial court's order denying his motion to withdraw his plea. As with his appointed trial counsel, Corraspe asserts that his plea withdrawal counsel rendered ineffective assistance because he failed to raise as error the trial judge's participation in the plea negotiations. We concluded above, however, that the Rule 11(c) proscription against judicial participation in plea discussions does not apply in Superior Court plea proceedings and that Corraspe has not shown that the judge's comments rendered his plea involuntary. Thus, the record before the Court is adequate to conclude that Corraspe is not entitled to relief on this ground.

 Corraspe also contends that his plea withdrawal counsel was ineffective because he failed to adequately prepare for the plea withdrawal hearing and make the necessary showing to prevail on the motion. Rule 126 of the Superior Court Rules required Corraspe to obtain "permission of the court" to change his plea to not guilty, but the rule does not contain any standard for granting permission. However, "the Supreme Court has enunciated the standard that such withdrawal should be permitted 'if for any reason the granting of the privilege seems fair and just.' " *Gov't of the V.I. v. Berry*, 631 F.2d 214, 219 (3d Cir. 1980) (quoting *Kercheval v. United States*, 274 U.S. 220, 224, 47 S. Ct. 582, 583, 71 L. Ed. 1009 (1927)). The decision of whether to grant permission

to withdraw a plea is within the Superior Court's discretion, and the three factors which counsel this decision are: "(1) whether the defendant asserts his innocence; (2) whether the government would be prejudiced by his withdrawal; and (3) the strength of the defendant's reason to withdraw the plea." *United States v. Huff*, 873 F.2d 709, 712 (3d Cir. 1989); *accord Berry*, 631 F.2d at 220.

In this case, Corraspe asserts that his plea withdrawal counsel was ill-prepared to assert his innocence because he never investigated the factual basis for Corraspe's claim of innocence in the murder case — the two witnesses who could have ostensibly offered either an alibi or other exculpatory evidence. In support of his assertion, Corraspe points out that his plea withdrawal counsel had first learned of Breen, murder counsel's law clerk and investigator, at the plea withdrawal hearing and that as a result of his ignorance of Breen counsel did not call him to testify at the plea withdrawal hearing. According to Corraspe, because counsel was unfamiliar with Breen, "no evidence in addition to the allegation of innocence was proffered concerning what two crucial witnesses might have been able to say about the Appellant's professed innocence." (Appellant's Br. 17.)

Assuming, without deciding, that counsel's ignorance of Breen was the result of inadequate preparation for the plea withdrawal hearing, Corraspe has not shown that he was prejudiced by counsel's lack of knowledge of Breen. Our assessment of prejudice "proceed[s] on the assumption that the decisionmaker[, the trial court,] is reasonably, conscientiously, and impartially applying the standards that govern the decision." *Strickland*, 466 U.S. at 695, 104 S. Ct. at 2068 "The governing legal standard plays a critical role in defining the question to be asked in assessing the prejudice from counsel's errors." *Id*. Thus, to prevail on his claim that he received ineffective assistance of counsel, Corraspe would need to show that, but for counsel's ignorance of Breen, there is a reasonable probability that the results of the plea withdrawal motion would have been different, i.e. the court would have exercised its discretion to grant the motion. *See Strickland*, 466 U.S. at 695, 104 S. Ct. at 2068.

While it is unclear why plea withdrawal counsel did not know of Breen, the record reveals that even if counsel had interviewed Breen, he would have learned only that Corraspe identified two purported witnesses who could not be located. Breen's absence from the

proceedings is a red herring; Corraspe needed to make at least a "plausible showing of how [the] testimony of [the] unavailable witness[es] would have been both material and favorable." *Id.* (citing *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867, 102 S. Ct. 3440, 3446, 73 L. Ed. 2d 1193 (1982)). "Such a showing may not be based on mere speculation," *id.*, and the record is completely devoid of any showing of what these two witnesses might have said in Corraspe's defense if they had been available to testify. Moreover, inasmuch as Breen was obviously unable to locate the witnesses, we cannot discern what he might have added to the inquiry concerning Corraspe's claim that they could provide an alibi or other exculpatory testimony. Thus, we conclude that even if Breen had testified at the hearing, there is no reasonable probability that the court would have exercised its discretion to grant Corraspe's motion to withdraw his plea.[7]

█ Corraspe's remaining contentions concerning plea withdrawal counsel's alleged deficient performance suffer a similar fate. Corraspe points to counsel's failure to object to the "unorthodox nature of the [plea withdrawal] proceedings and to crucial, objectionable testimony elicited during the hearing" as evidence that counsel rendered ineffective assistance at the hearing. (Appellant's Br. 17.) In this regard, Corraspe points out that while his trial attorneys appeared at the hearing as witnesses, the court also treated them as respondents and allowed them to examine other witnesses. Even assuming, without deciding, that plea withdrawal counsel's performance was deficient as alleged by Corraspe, he has not made *any* showing of prejudice. And, upon reviewing the transcript of proceedings, we can discern no basis for concluding that, but for these asserted deficiencies, there is a reasonable probability that the results would have been different. Accordingly, Corraspe has not demonstrated that he received ineffective assistance of plea withdrawal counsel.

## IV. CONCLUSION

Corraspe has not shown that the Superior Court erred by participating in the discussions preceding his guilty plea or that he received ineffective

---

[7] Our conclusion is bolstered by the fact that the Superior Court also denied the motion on the ground that that Corraspe was not, as he asserted, coerced into pleading guilty. The court reached what it characterized as an "inescapable conclusion . . . that [Corraspe] made a tactical and strategic choice to plead guilty." (J.A. at 41.)

assistance of counsel. Rule 126 of the Superior Court Rules, which governs plea proceedings in the Superior Court, does not prohibit the court from participating in plea discussions. Accordingly, Corraspe's appointed trial counsel did not render ineffective assistance by failing to object to the court's comments on the ground that they were prohibited by Rule 11 of the Federal Rules of Criminal Procedure. In addition, even if the performance of Corraspe's specially appointed plea withdrawal counsel was deficient, Corraspe has not shown that he was prejudiced by the performance. For these reasons, the Superior Court's order denying Corraspe's motion to withdraw his plea is affirmed.