# KASEEM BRUNO, Appellant/Defendant
## ·v.
# PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff

S. Ct. Criminal No. 2011-0104

Supreme Court of the Virgin Islands

September 19, 2013

DOLACE MCLEAN, ESQ., VISIONS Law Firm, St. Thomas, USVI, *Attorney for Appellant.*

KIMBERLY L. SALISBURY, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(September 19, 2013)

CABRET, *Associate Justice.* Kaseem Bruno appeals his conviction in the Superior Court after he pleaded guilty to aggravated child abuse in relation to the death of his two-month-old daughter. He argues that the Superior Court erred in summarily denying his request to withdraw the guilty plea without conducting a proper inquiry. For the following reasons, we affirm the Superior Court's November 8, 2011 Judgment and Commitment.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On April 18, 2010, Lilia Roumo woke up at 7 a.m. to feed her two-month-old infant daughter — identified in court documents as K.B. — and discovered that she was not breathing. She woke up Kaseem Bruno, her boyfriend and K.B.'s father, who joined her in attempting to administer CPR for two hours. During CPR, milk came out of K.B.'s nose and mouth, her feet turned purple, and her body grew stiff. Neither Bruno

nor Roumo called 911, as they did not have a phone in their apartment and Bruno's cell phone was out of minutes. Nor did they seek the assistance of their neighbors.

When CPR failed, Roumo wrapped K.B. in a towel and they took her to the apartment of Darna Todman, Bruno's mother. Todman called 911, and emergency personnel arrived shortly after. When Detective Cherese Thomas arrived, she noticed ligature marks around K.B.'s neck, and Bruno stated without prompting that Roumo had killed the infant. Bruno and Roumo were taken into custody, and in a written statement, Roumo explained that the ligature marks were the result of a chain necklace worn around the infant's neck, which caused cuts when she turned over.

A few days later, Roumo told police that the day before K.B. died, Bruno choked K.B. by wrapping a cord around her neck after she had been crying. Roumo stated that Bruno did this because K.B. would not stop crying and he was trying to avoid being served with court documents. When Bruno stopped choking her, she began to gasp and when Ruomo attempted to check on her, Bruno told Ruomo that "nothing was wrong." (J.A. 83.) When Ruomo attempted to feed K.B. at 5 a.m. the next morning, Ruomo noticed bruises on K.B.'s neck, that the infant would cry whenever she moved her neck, and that she was not feeding normally. After feeding K.B., Ruomo went back to sleep, waking up two hours later to find that K.B. was not breathing. An autopsy later confirmed that the infant died of asphyxiation from ligature strangulation, and that she had broken ribs and head trauma.

On May 19, 2010, the People filed an Information against Bruno and Roumo.[1] The next day, Bruno pleaded not guilty to all charges and demanded a jury trial. Roumo entered into a cooperation agreement with the People on March 1, 2011, agreeing to testify against Bruno, and the People agreed to dismiss the charges against her with prejudice after a judgment was entered in Bruno's case. On September 20, 2011, the People filed an Amended Information, removing the charges against

---

[1] The Information charged Bruno with: Count I, first-degree murder, in violation of 14 V.I.C. §§ 921, 922(a)(2); Count II, first-degree assault, in violation of 14 V.I.C. § 295(1); Count III, aggravated child abuse, in violation of 14 V.I.C. § 506(3); and Count IV, aggravated child neglect, in violation of 14 V.I.C. §§ 504, 11. Roumo was charged with: Count V, involuntary manslaughter in violation of 14 V.I.C. § 924(2); Count VI, aggravated child abuse and neglect, in violation of 14 V.I.C. §§ 506(3), 11; Count VII, misprision of a felony, in violation of 14 V.I.C. § 13; and Count VIII, accessory after the fact, in violation of 14 V.I.C. § 12.

Roumo and leaving the charges against Bruno unaltered. On September 30, 2011, the People filed a four count Second Amended Information against Bruno. That same day, the People offered to dismiss three of the four charges against Bruno and recommend a fifteen year sentence if he pleaded guilty to aggravated child abuse under 14 V.I.C. § 506(3). Bruno agreed to the deal that day.

The Superior Court held a change of plea hearing on October 3, 2011. During the hearing, the Superior Court declared Count III of the Second Amended Information — charging aggravated child abuse and neglect under 14 V.I.C. § 506(1) and (3) — to be "illegal" because it charged two crimes in one count and did not follow the language of the statute. (J.A. 36.) The court allowed the People to move forward with Count III from the First Amended Information, which charged only aggravated child abuse under 14 V.I.C. § 506(3). After advising Bruno of his rights and the consequences of a guilty plea, the court asked him if he was aware of the maximum sentence for aggravated child abuse, to which Bruno replied twenty-five years. After briefly conferring with his attorney, Bruno changed his answer to thirty, then correctly stated the minimum sentence of five years and that he was satisfied with the advice and assistance of his attorney.

When Bruno appeared for sentencing on October 28, 2011, he asked to withdraw his guilty plea. The court denied this request, reminding Bruno of the statements he made under oath at the change of plea hearing. The court then sentenced Bruno to twenty years, with five years suspended, credit for time served, and $75 in court costs. The other charges were dismissed with prejudice.

On November 14, 2011, the Superior Court entered into its docket two letters Bruno had sent to the court. In the first, dated October 24, 2011, Bruno stated that he wanted to withdraw his plea, explaining that he was innocent and that the consequences of a guilty plea were never fully explained to him. In the second letter, dated November 2, 2011, Bruno again sought to withdraw his plea, asserting that he was innocent because Roumo was responsible for K.B.'s death, that he thought he was pleading guilty to aggravated child abuse "just for being . . . [at] the scene of the crime," and that he thought his plea would result only in a maximum

sentence of five years.[2] (J.A. 68.) Also on November 14, 2011, Bruno filed a *pro se* motion in the Superior Court seeking to have the charges against him dismissed based on alleged ineffective assistance of counsel. *Bruno v. People*, S. Ct. Crim. No. 2011-0104, slip op. at 1-2 (V.I. Nov. 15, 2011). The next day, Bruno filed a *pro se* notice of appeal with this Court.[3] In his motion to the Superior Court, which was dated February 12, 2011, Bruno claimed that his appointed counsel — whom he identified as Carl R. Williams, Esq. — had not met with him in person and failed to make any of the pre-trial motions Bruno requested.[4] We held Bruno's appeal in abeyance pending the Superior Court's ruling on the motion, *id.*, which it issued on November 25, 2011. In dismissing Bruno's claims, the Superior Court noted that Carl R. Williams, Esq. had never been appointed to serve as Bruno's counsel and that if his motion was in reference to the attorney representing him on February 12, 2011 — a Territorial Public Defender — it was moot because that attorney was relieved as counsel on March 14, 2011, and replaced by an attorney in private practice.

After learning of Bruno's *pro se* appeal, his appointed counsel moved to withdraw from the case on November 16, 2011. The Superior Court granted this motion on March 21, 2012. *People v. Bruno*, Super. Ct. Crim. No. 250/2010 (STT), slip op. at 1 (V.I. Super. Ct. Mar. 21, 2012). That same day, this Court lifted the abeyance on Bruno's appeal and ordered the appointment of appellate counsel. *Bruno v. People*, S. Ct. Crim. No. 2011-0104, slip op. at 1 (V.I. Mar. 21, 2012).

## II. JURISDICTION

We have jurisdiction over this criminal appeal pursuant to V.I. CODE ANN. tit. 4, § 32(a), which provides that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." Because the Superior Court's November 8, 2011 Judgment and

---

[2] It is unclear from the record why these letters were not docketed with the Superior Court until November 14, 2011.

[3] The notice of appeal was dated November 2, 2011, but was not docketed until November 15, 2011. Similarly, the motion was dated February 12, 2011, but was not docketed until November 14, 2011.

[4] Bruno also referenced ineffective assistance of counsel in his notice of appeal, but he does not raise this issue in his appellate brief. *See* V.I.S.CT.R. 22(m) ("Issues that were . . . raised or objected to but not briefed . . . are deemed waived for purposes of appeal").

Commitment is a final judgment, *see Phillip v. People*, 58 V.I. 569, 582 (V.I. 2013), and Bruno timely filed a notice of appeal on November 15, 2011, we have jurisdiction over this appeal. *See* V.I.S.CT.R. 5(b)(1).

## III. DISCUSSION

Bruno argues that the Superior Court did not properly evaluate his attempt to withdraw his guilty plea at the sentencing hearing on October 28, 2011. He contends that the court should have granted his motion, as he asserted his innocence, the People would not have been prejudiced by the withdrawal of the guilty plea, and he had strong reasons for withdrawing the plea. This Court reviews the Superior Court's denial of a motion to withdraw a guilty plea for abuse of discretion. *Corraspe v. People*, 53 V.I. 470, 486-87 (V.I. 2010).

■ Superior Court Rule 126 governs guilty pleas in the Superior Court, and required Bruno to obtain "permission of the court" to change his plea back to not guilty. *Corraspe*, 53 V.I. at 482. Such a withdrawal should be permitted " 'if for any reason the granting of the privilege seems fair and just.' " *Id.* at 486 (quoting *Gov't of the V.I. v. Berry*, 631 F.2d 214, 219, 17 V.I. 623 (3d Cir. 1980)). The burden of demonstrating that there is a "fair and just" reason for withdrawing the plea falls on the defendant, "and that burden is substantial." *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003) (citing *United States v. Hyde*, 520 U.S. 670, 676-77, 117 S. Ct. 1630, 137 L. Ed. 2d 935 (1997)). In determining whether Bruno met this burden, the Superior Court must consider whether he meaningfully asserted his innocence, the strength of his reason for withdrawing the plea, and whether the withdrawal would prejudice the People. *Corraspe*, 53 V.I. at 486-87 (quoting *United States v. Huff*, 873 F.2d 709, 712 (3d Cir. 1989)).

■ At Bruno's sentencing hearing on October 28, 2011, Bruno addressed the court, requesting to withdraw his plea, which was immediately denied.[5] The court then briefly inquired into Bruno's reasons

---

[5] The entire exchange between Bruno and the court was as follows:

THE DEFENDANT: I was asking if I could withdraw the plea.
THE COURT: Denied. You have any reasons?
THE DEFENDANT: I didn't understand what I was dealing with.
THE COURT: You know what you did on the 3rd?
**(No response)**

753

for the request, without considering whether Bruno had asserted his innocence or if the People would be prejudiced by the withdrawal of the guilty plea. The court did not give its reasons for denying the motion, nor did it issue a written order, but instead merely reminded Bruno of his statements under oath during the change of plea hearing. Similarly, in the Judgment and Commitment, the Superior Court again failed to consider the *Corraspe* factors, explaining that it denied the motion "after reminding [Bruno] that he had been *voir dired* extensively before being allowed to enter his plea, and that he had entered that plea knowingly and voluntarily." (J.A. 11.) Nor did the court consider the appropriate factors in its November 28, 2011 Order denying his ineffective assistance of counsel claim — at which time Bruno's letters dated October 24 and November 2 were before the court — and instead merely found that Bruno's plea was voluntary and emphasized the strength of the court's "Rule 11 colloquy." (J.A. 75-80.) While the voluntariness of a guilty plea is an appropriate factor to consider in determining the strength of a defendant's reason to withdraw a guilty plea, *see Jones*, 336 F.3d at 253, the court erred in failing to consider the other *Corraspe* factors.

But "[n]o error or defect in any ruling . . . by the Superior Court . . . is ground for granting . . . reversal on appeal where its probable impact, in light of all of the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties." V.I.S.Cт.R. 4(i). Therefore, despite the Superior Court's error, we must determine whether this error affected Bruno's substantial rights. In order to do so, we must determine whether Bruno's stated reasons for withdrawing his plea were legally sufficient to satisfy his burden — if they were not, the Superior Court's error was ultimately harmless.

█ Bruno argues that he met his burden of meaningfully reasserting his innocence because he has maintained his innocence throughout the case. Despite Bruno's claims of innocence in his letters to the court, the burden under the first factor in the *Corraspe* analysis cannot be met through "[b]ald assertions of innocence," which are "insufficient to permit a defendant to withdraw his guilty plea." *Jones*, 336 F.3d at 252. Once a

---

You know all the questions that I asked you under oath?
THE DEFENDANT: Yes.
THE COURT: Alright. You know what you said under oath. So, it's denied.
(J.A. 54.)

defendant has pleaded guilty, he "must then not only reassert innocence, but give sufficient reasons to explain why contradictory positions were taken before the [trial] court and why permission should be given to withdraw the guilty plea and reclaim the right to trial." *Id.* at 253. And these "[a]ssertions of innocence must be buttressed by facts in the record that support a claimed defense." *Id.* at 252-53 (quoting *United States v. Brown*, 250 F.3d 811, 818 (3d Cir. 2001)) (internal quotation marks omitted). It is clear here that Bruno did not meet this burden. His claimed defense was that Roumo was responsible for K.B.'s death, but he "offered no credible facts in support of his claim." *Jones*, 336 F.3d at 253 (affirming denial of a motion to withdraw plea where the defendant "submitted no testimonial proof" of his innocence). Without such a showing, Bruno cannot satisfy the first *Corraspe* factor. *See Brown*, 250 F.3d at 818 (affirming refusal of permission to withdraw the guilty plea where the defendant failed to present any evidence that she did not commit the crime); *Berry*, 631 F.2d at 220 (" 'Were mere assertion of legal innocence always a sufficient condition for withdrawal, withdrawal would effectively be an automatic right. There are few if any criminal cases where the defendant cannot devise some theory or story which, if believed by a jury, would result in his acquittal.' " (quoting *United States v. Barker*, 514 F.2d 208, 221, 168 U.S. App. D.C. 312 (1975)).

█ Further, Bruno's reasons for withdrawing his plea were also not sufficient. He now argues that ongoing difficulties with his attorneys and his failure to understand the ramifications of his plea — as shown by his initial confusion regarding the maximum penalty he could receive — as well as the fact that he only has an eighth grade education, suffers neurological difficulties, and an inability to handle stress, demonstrate that he has strong reasons for withdrawing his plea. But the only reason given to the Superior Court when Bruno sought to withdraw his plea (other than his assertions of innocence) was that he did not understand the ramifications of his plea, stating: "no one ever really explained the details of my plea to me," in his October 24 letter, (J.A. 51), and that "I thought I was signing a plea [for] 0-5 years," in his November 2 letter. (J.A. 68.) These reasons are not sufficient under the *Corraspe* analysis. As the Superior Court found in its November 25, 2011 Order, Bruno "was thoroughly advised of his rights at the change of plea" hearing. (J.A. 78.) At that hearing, the court explained to Bruno the ramifications of pleading guilty, as well as the minimum and maximum sentences. Although he

incorrectly stated the maximum penalty at first, Bruno consulted with his attorney and then correctly recited the maximum penalty he could receive. The court then asked Bruno if he was satisfied with his attorney, to which he replied "yes." (J.A. 46.) Bruno also stated that his plea was not motivated by intimidation, and that his plea was entered voluntarily. Given the fact that Bruno was fully apprised of the charges against him — and the Superior Court went through a lengthy colloquy ensuring that he knew the penalties he could face and that he was satisfied with the performance of his attorney — Bruno's argument that he did not understand the ramifications of his plea must fail. *See Huff*, 873 F.2d at 711 (holding that defendant's argument that he did not understand the consequences of his plea were "clearly wrong" because they were "explained when he pleaded guilty"); *United States v. Surine*, 375 Fed. Appx. 164, 168 (3d Cir. 2010) (rejecting argument that defendant did not understand plea agreement because he stated at change of plea hearing that he was satisfied with his attorney and the maximum and minimum penalties were explained to him by the court); *see generally Jones*, 336 F.3d at 252 ("[A] change of mind[] or the fear of punishment are not adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty.").[6]

■ Therefore, even though the Superior Court erred in failing to conduct the required *Corraspe* analysis in ruling on Bruno's motion to withdraw his guilty plea, that error did not affect his substantial rights — and therefore was harmless — because Bruno did not meet his burden of supporting his assertions of innocence with facts supporting his claimed

---

[6] The People argues that it would be prejudiced if Bruno were allowed to withdraw his plea because it has dismissed with prejudice all the charges against Ruomo, and cannot assure her cooperation as a witness. But under the circumstances of this case, we need not consider the prejudice the People would face if Bruno were allowed to withdraw his plea. Bruno's failure to meet his burden of meaningfully reasserting his innocence and demonstrating strong reasons for withdrawing the plea is fatal to his attempts to withdraw the plea. *United States v. Harris*, 44 F.3d 1206, 1210 n.1 (3d Cir. 1995) ("[T]he Government is not required to show prejudice when a defendant has shown no sufficient grounds for permitting withdrawal of a plea." (quoting *United States v. Saft*, 558 F.2d 1073, 1083 (2d Cir. 1977) (alteration omitted)).

defense and failed to provide sufficient reasons for withdrawing his guilty plea.[7]

## IV. CONCLUSION

The Superior Court erred in ruling on Bruno's motion to withdraw his guilty plea by failing to consider whether he met his burden in asserting his innocence, whether he had given sufficient reasons to withdraw the guilty plea, and the prejudice the People would face if Bruno were allowed to withdraw his guilty plea. But this error was harmless because Bruno failed to meet his burden of establishing these factors. Accordingly, we affirm the Superior Court's November 8, 2011 Judgment and Commitment.

---

[7] Bruno also asserts that the charge he pleaded guilty to should have been dismissed because Count III of the Second Amended Information impermissibly charged two separate offenses in a single count, aggravated child abuse and aggravated child neglect. Not only does Bruno's argument lack any factual basis — the Second Amended Information was in fact dismissed and the People were allowed to proceed under the First Amended Information — it is also waived. As this Court explained in *Tindell v. People*, 56 V.I. 138, 147 (V.I. 2012), "a defendant who has pled guilty or *nolo contendere* only possesses an absolute right to challenge the sufficiency of the jurisdictional allegations on appeal, and may not challenge any other defect in the information unless authorized by some other authority." Bruno has identified no such "other authority," and in order to properly invoke the subject matter jurisdiction of the Superior Court, the Information only needs to allege "that the charged offense occurred in the Virgin Islands and to cite to the Virgin Islands criminal statute" Bruno allegedly violated. *Id.* at 148. The original Information and both amended versions fulfilled these requirements, and therefore Bruno cannot now challenge the Information in this appeal.