MICHAEL W. CRIPPS, Appellant, v.
THE STATE OF NEVADA, Respondent.

No. 43477

July 20, 2006                                    137 P.3d 1187

---

[2]See *Gallego v. State*, 117 Nev. 348, 365-66 & n.34, 23 P.3d 227, 239 & n.34 (2001).

*Matthew J. Stermitz*, Elko, for Appellant.

*George Chanos*, Attorney General, Carson City; *Richard W. Sears*, District Attorney, and *Kevin R. Briggs*, Deputy District Attorney, White Pine County, for Respondent.

## OPINION

By the Court, HARDESTY, J.:

In this appeal, we revisit our decision in *Standley v. Warden*, addressing judicial participation in plea negotiations.[1] Because of the potential coercive effect of such participation, we overrule *Standley* and adopt new standards governing the district courts' participation in the plea negotiation process. We conclude that these new standards shall apply prospectively only to all future criminal cases to be commenced in the courts below. Applying the holding in *Standley* to the facts before us, we affirm the judgment of conviction at issue in this appeal.

### FACTS

In June 2003, appellant Michael W. Cripps was charged with one felony count of failing to pay over $18,000 in court-ordered support for his two minor children. On the first day of the scheduled jury trial, Cripps agreed to enter a plea of nolo contendere to the charge. In exchange for the plea, the State agreed to recommend that Cripps be sentenced for a gross misdemeanor provided that he sought treatment for his depression, regularly took his medication, and obtained employment. After a thorough canvass, the district court accepted Cripps' plea and stayed imposition of the sentence so that he could obtain employment and mental health counseling.

Cripps failed to satisfy the conditions of the plea agreement. Subsequently, he filed a proper person presentence motion seeking: (1) to withdraw his plea; (2) the appointment of new counsel or, alternatively, self-representation; and (3) the disqualification of Judge Pavlikowski. In the motion, Cripps alleged that Judge Pavlikowski coerced his plea of nolo contendere in a four-hour, off-the-record "secret meeting." Cripps alleged that the judge told him that he had reviewed the evidence and that, if Cripps went to trial, he would surely be convicted and go to prison. Also, Cripps alleged that the judge recommended that he plead guilty, explaining that Cripps would receive probation, avoid a felony conviction, and get to see his children again.

The State opposed the motion, disputing Cripps' account of Judge Pavlikowski's involvement in the plea negotiations. After hearing argument from Cripps, the district court denied his motion and subsequently sentenced him under the felony charge to serve a term of 12 to 32 months in the Nevada State Prison. This appeal followed.

---

[1]115 Nev. 333, 990 P.2d 783 (1999).

## DISCUSSION

Cripps argues that the district court erred in denying his presentence motion to withdraw his plea of nolo contendere because his plea was improperly coerced by the district judge.[2] Cripps alleges that the judge abandoned his role as a neutral arbiter by offering his personal opinion of the evidence and encouraging Cripps to enter a guilty plea.

This court has not hesitated to invalidate a guilty plea as involuntary where it plainly appears from the record that the plea was improperly coerced by the district court.[3] In *Standley*, for example, we noted:

> Here, the judge did more than facilitate the plea negotiations or make an isolated comment about the plea offer. Rather, the judge effectively convinced appellant to accept the plea offer through lengthy exposition. In commenting on the offer, the judge evinced an unmistakable desire that appellant accept the offer. Appellant had good reason to fear offending the judge if he declined because the same judge would have presided over the trial and, if the trial resulted in a conviction, the judge would have determined the appropriate sentence.[4]

*Standley* also observed: " 'When a judge suggests to a defendant . . . that he should plead guilty, the coercive effect of this suggestion is likely to be overwhelming.' "[5] In invalidating the plea, however, *Standley* cautioned "against an expansive interpretation" of its holding, noting that "[t]he constitution does not forbid all participation by the judge in the plea negotiation process" and that "[o]nly where the judge's conduct is improperly coercive will we consider affording a defendant an opportunity to withdraw his or

---

[2]Cripps also argues that (1) the sentence imposed is cruel and unusual; (2) the imposition of both restitution and a prison sentence violated his constitutional right to be free from double jeopardy; (3) the district court erred in hearing his motion for judicial disqualification; (4) the State breached the plea agreement; and (5) the district court abused its discretion in denying his motion for alternate counsel and, alternatively, for self-representation. We have considered Cripps' arguments and conclude that they lack merit. In particular, we note that the sentence was within statutory limits, the Double Jeopardy Clause was not implicated by the imposition of restitution and a prison sentence, Cripps' motion for judicial disqualification was procedurally deficient, the State did not breach the plea agreement, Cripps failed to show adequate cause for substitute counsel, and his request for self-representation was equivocal.

[3]*See, e.g., Standley*, 115 Nev. 333, 990 P.2d 783; *Smith v. State*, 110 Nev. 1009, 1014, 879 P.2d 60, 63 (1994).

[4]115 Nev. at 337, 990 P.2d at 785.

[5]*Id.* (quoting Welsh S. White, *A Proposal for Reform of the Plea Bargaining Process*, 119 U. Pa. L. Rev. 439, 452 (1971), *quoted in U.S. v. Bruce*, 976 F.2d 552, 556 n.3 (9th Cir. 1992)).

her plea.''[6] Although in *Standley*, we relied extensively on the Ninth Circuit Court of Appeals decision in *United States v. Bruce*,[7] we stopped short of adopting the absolute prohibition of any judicial involvement in the plea discussions applied in the federal courts.

Some states, like Nevada, permit a limited judicial role in the plea negotiation process.[8] But even states that permit some judicial involvement do so cautiously with awareness of the negative potential effect it can have on both the voluntariness of the plea and the appearance of fairness.[9] Other jurisdictions follow the federal approach and expressly prohibit judicial involvement of any form in the plea negotiations.[10] The federal cases apply Federal Rule of Criminal Procedure 11(c)(1), which provides that ''[t]he court must not participate in [plea] discussions.''[11] Rule 11 has been interpreted as an absolute, bright-line rule commanding that the district court shall not participate in, and shall remove itself from, ''any discussion of a plea agreement that has not yet been agreed to by the parties in open court.''[12] *Bruce* listed three primary concerns underlying this absolute, bright-line approach.[13]

First, ''judicial involvement in plea negotiations inevitably carries with it the high and unacceptable risk of coercing a defendant to accept the proposed agreement and plead guilty.''[14] As *Bruce* explained, judicial involvement '' 'may coerce the defendant into an involuntary plea that he would not otherwise enter' '' and cause the defendant to accept a plea only out of fear of offending the judge

---

[6]*Id.* at 337-38, 990 P.2d at 785.

[7]976 F.2d at 556.

[8]*See State v. Bouie*, 817 So. 2d 48, 56 (La. 2002); *State v. Niblack*, 596 A.2d 407 (Conn. 1991); *People v. Weaver*, 12 Cal. Rptr. 3d 742 (Ct. App. 2004); *see also* Ronald Wright & Marc Miller, *The Screening/Bargaining Tradeoff*, 55 Stan. L. Rev. 29, 89 & n.224 (2002) (noting that Arizona, Florida, Hawaii, Idaho, Illinois, Missouri, North Carolina, Oregon, Utah, and Vermont allow for judicial involvement in plea).

[9]*See Weaver*, 12 Cal. Rptr. 3d at 754-55.

[10]*See State v. Buckalew*, 561 P.2d 289 (Alaska 1977); *see also* Wright & Miller, *supra* note 8, at 88 & n.223 (stating that Arkansas, Colorado, Delaware, Georgia, Maine, Massachusetts, Mississippi, New Mexico, North Dakota, South Dakota, Tennessee, Virginia, Washington, and West Virginia have adopted bans on judicial involvement in plea negotiations); Wanda Ellen Wakefield, *Judge's Participation in Plea Bargaining Negotiations as Rendering Accused's Guilty Plea Involuntary*, 10 A.L.R. 4th 689 (1981).

[11]*See also* Marjorie A. Shields, *Prohibition of Federal Judge's Participation in Plea Bargaining Negotiations Under Rule 11(e) of Federal Rules of Criminal Procedure*, 161 A.L.R. Fed. 537 (2000).

[12]*Bruce*, 976 F.2d at 556.

[13]*Id.*

[14]*Id.* (citing *United States v. Werker*, 535 F.2d 198, 202 (2d Cir. 1976)).

and incurring unfavorable rulings at trial or a more severe sentence after trial.[15] No matter how motivated a judge may be to avoid any potential coercive effects, the judge's participation in the formulation of a plea agreement necessarily ''brings to bear the full force and majesty of [the judicial] office.''[16]

Second, *Bruce* explained that ''Rule 11 protects the integrity of the judicial process.''[17] ''The Rule is based on the sound principle that the interests of justice are best served if the judge remains aloof from all discussions preliminary to the determination of guilt or innocence so that his impartiality and objectivity shall not be open to any questions or suspicion when it becomes his duty to impose sentence.''[18]

Third, *Bruce* emphasized that the federal bright-line approach preserves ''the judge's impartiality *after* the negotiations are completed.''[19] A judge's involvement in the plea process detracts from the judge's objectivity by making it difficult for a judge to subsequently assess the voluntariness of the plea objectively, by posing an inherent risk that, if the negotiations ultimately fail, the judge's impartiality during trial will be diminished, and by detracting from ''the judge's objectivity in post-trial matters such as sentencing and motions for a judgment of acquittal.''[20] Additionally, in the course of plea negotiations, the judge may obtain information about the accused's guilt or innocence that, even if well intentioned, may diminish judicial objectivity.[21] But, ''if the judge remains aloof from all [plea] discussions preliminary to the determination of guilt or innocence,'' judicial impartiality and objectivity cannot be questioned.[22]

Despite these policy concerns, neither party in this case advocates adopting an outright prohibition on judicial involvement in the plea negotiations. Cripps argues that *Standley* should not be modified and that judges should be permitted to participate at their discretion in the plea discussions, provided their conduct is not coercive. The State argues that this court should set forth specific guidelines for judicial participation by authorizing judges to advise an accused, before entry of the plea, whether the sentencing recommendation of the parties will be followed. The State sug-

---

[15]*Id.* (quoting *Werker*, 535 F.2d at 202).

[16]*United States v. Gilligan*, 256 F. Supp. 244, 254 (S.D.N.Y. 1966).

[17]*Bruce*, 976 F.2d at 557.

[18]*Id.* (quoting *Werker*, 535 F.2d at 203).

[19]*Id.*

[20]*Id.* at 557-58.

[21]*Bruce*, 976 F.2d at 557.

[22]*Werker*, 535 F.2d at 203.

gests that knowing the potential sentence would be beneficial because it would give a reluctant defendant more information to aid in the decision of whether to enter a guilty plea.

From our perspective, the holding of *Standley* has proven to be difficult to apply on appeal in actual practice. First, this court is often unable to objectively analyze the extent of any judicial participation because an insufficient record was preserved below. This is particularly true where, as here, a defendant enters a plea following an off-the-record, in-chambers discussion with the judge. Second, the actual coercive impact of any judicial participation in the plea process is not easily discernable, even where a complete record has been compiled and presented on appeal. Third, although *Standley* discusses the inherent and unacceptable risks involved in judicial participation in the plea process, it provides less than satisfactory guidance regarding the permissible boundaries of such participation.

Thus, under these circumstances, we have concluded that a bright-line rule prohibiting judicial involvement in the plea negotiation process will not only provide the most practical and expedient approach, but also the most equitable and prudent one. Nonetheless, we conclude that a single exception to this bright-line prohibition is warranted. We agree with the State that the process will benefit from permitting a district court to indicate, on the record, whether it would be inclined to follow a sentencing recommendation proposed by the parties.[23] Accordingly, we hereby adopt the following standards, applicable only to future cases to be commenced in the courts below, governing judicial participation in the plea negotiation process.

First, because of the inherent risks involved, as well as the difficulties in reviewing claims on appeal of improper judicial coercion, we conclude that henceforth all off-the-record discussions between the parties and the judge respecting the plea negotiations shall be expressly prohibited. When the district court participates to any degree in the plea process, the judge shall ensure that such participation is placed on the record and transcribed.

Second, we expressly prohibit any judicial participation in the formulation or discussions of a potential plea agreement with one

[23]Such a limited judicial role finds partial support in the recommendations approved by the American Bar Association. *See* ABA Standards for Criminal Justice: Pleas of Guilty 128, Standard 14-3.3(d) (3d ed. 1999) (permitting the parties to present the court ''with a proposed plea agreement negotiated by the parties'' and allowing the court to ''indicate whether the court would accept the terms as proposed and if relevant, indicate what sentence would be imposed'').

narrow, limited exception: the judge may indicate on the record whether the judge is inclined to follow a particular sentencing recommendation of the parties. Any other comments or discussion by the judge relating to a potential plea must be strictly avoided.[24] We further note, however, that when a judge does express an inclination to follow the parties' sentencing recommendation, the defendant must be given an opportunity to withdraw the plea if the judge later reconsiders and concludes that a harsher sentence is warranted.

Notably, judicial involvement in the plea negotiations may constitute harmless error. Like subsection 11(h) of the federal rule,[25] NRS 178.598 provides that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." In *United States v. Daigle*, the Fifth Circuit Court of Appeals noted that "judicial participation in plea negotiations is . . . subject to . . . harmless error analysis."[26] Further, the court explained that the "focus . . . of the harmless error inquiry is whether the district court's [erroneous participation] may reasonably be viewed as having been a material factor affecting the defendant's decision to plead guilty."[27] We conclude that the application of the test set forth in *Daigle* not only incorporates the directives of NRS 178.598, but also provides a workable and reasonable method of assessing whether judicial involvement in the plea process should be deemed harmless error. The appellant, however, will carry the burden of establishing that any reversible error occurred.

---

[24]Our holding, of course, is limited to judicial involvement and discussion during the plea negotiation process prior to any agreement between the parties; it does not apply to the court's conduct of the plea canvass after a plea agreement has been reached by the parties. *See State v. Freese*, 116 Nev. 1097, 1105, 13 P.3d 442, 448 (2000) (noting that a plea canvass "is a constitutional mandate to ensure that a court has sufficient information to conclude that a defendant understands the consequences of a plea as well as the nature of the offenses"). Additionally, we emphasize that in order to promote its orderly, efficient and fair application, we have elected to apply the rule announced today prospectively only. In contrast to our general application of new rules of state law, our holding shall apply only to criminal cases where plea negotiations have not yet been completed or presented to the courts below. *See, e.g., Richmond v. State*, 118 Nev. 924, 928-29, 59 P.3d 1249, 1252 (2002) (noting that state courts are generally free to determine retroactivity of new rules of state law and holding that this court will apply new rules of state law to cases pending on direct appeal only when the issue has been properly preserved for appeal).

[25]Fed. R. Crim. P. 11(h) provides: "A variance from the requirements of this rule is harmless error if it does not affect substantial rights."

[26]63 F.3d 346, 349 (5th Cir. 1995).

[27]*Id.*

Because we have concluded that this new holding should be applied prospectively only, in the instant case, we will apply the rule previously announced in *Standley*. We conclude that Cripps has failed to establish that the judge improperly coerced his plea. As noted above, this court is unable to effectively review Cripps' allegations of judicial involvement in the plea negotiations because he failed to ensure that the proceedings in the judge's chambers where the alleged violations occurred were recorded or transcribed. Although we have concluded that in future cases any plea discussions involving the judge must be placed on the record, in this case it was Cripps' responsibility to ensure that proceedings were recorded or transcribed and any alleged errors were properly preserved for appellate review.[28] In short, Cripps has failed to provide this court with an appellate record sufficient to demonstrate error.

Although the parties dispute much of what occurred in chambers, the State does concede that the judge informed Cripps that he would follow the sentencing recommendation of the parties. Under the single exception to the new bright-line approach we adopt today, such an advisement would have been permissible. Further, under our holding in *Standley*, we cannot conclude based on the record before us that the judge thereby improperly coerced Cripps' plea. To the contrary, the record before us shows that Cripps advised the court, in the written plea agreement and, again, at the plea canvass, that he was entering his nolo contendere plea voluntarily and not based on threat or secret promise. Further, no affirmative statement by the district court appears anywhere in the record supporting the allegation that the judge improperly coerced, advocated for, or encouraged Cripps' plea. Rather, at the sentencing hearing, the district judge denied that he had recommended that Cripps accept the plea and further noted that, at the request of defense counsel, he had merely explained the difference between a gross misdemeanor and felony. Accordingly, under the holding in *Standley*, we conclude that Cripps has failed to demonstrate that the district court improperly coerced his nolo contendere plea or abused its discretion by denying the presentence motion to withdraw the plea.

## CONCLUSION

In all future cases, any off-the-record discussions between the judge and the parties relating to a potential plea agreement shall be prohibited. Further, we will apply a bright-line rule prohibiting any judicial participation in the plea negotiation process with one ex-

---

[28]*Greene v. State*, 96 Nev. 555, 558, 612 P.2d 686, 688 (1980) (noting that the obligation "to make a proper appellate record rests on appellant").

ception: the judge may indicate whether he or she is inclined to accept a sentencing recommendation of the parties. In the event that a judge expresses such an inclination, but later reconsiders and concludes that the recommendation will not be followed, the judge must permit the defendant an opportunity to withdraw the plea and proceed to trial prior to sentencing.

Applying our previous holding in *Standley* to the facts and record before us, we conclude that Cripps has failed to demonstrate any improperly coercive judicial involvement in the plea negotiations. The district court did not abuse its discretion in denying the presentence motion to withdraw. Accordingly, we affirm the judgment of conviction.

ROSE, C. J., BECKER, MAUPIN, GIBBONS, DOUGLAS and PARRAGUIRRE, JJ., concur.