**Electronically Filed
Supreme Court
SCWC-15-0000548
20-SEP-2017
09:55 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---oOo---

_____

STATE OF HAWAIʻI,
Respondent/Plaintiff-Appellee,

vs.

YOSHIRO SANNEY,
Petitioner/Defendant-Appellant.

_____

SCWC-15-0000548

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-15-0000548; CR. NO. 10-1-1570)

SEPTEMBER 20, 2017

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY McKENNA, J.

## I.    Introduction

Yoshiro Sanney ("Sanney") challenges the Intermediate Court of Appeals' ("ICA") affirmance of the Circuit Court of the First Circuit's ("circuit court") denial of his Motion to Reconsider Sentence ("motion to reconsider").  Sanney argues the circuit

court[1] abused its discretion by refusing to vacate his sentence of ten years in prison and $25,000 in fines and resentence him pursuant to the court's original sentencing inclination of probation with up to eighteen months of imprisonment as a condition of probation.

This appeal raises issues regarding appropriate procedures for cases in which a trial court provides a "sentencing inclination." We hold that here, the circuit court did not abuse its discretion by denying Sanney's motion to reconsider, because Sanney voluntarily and knowingly entered his plea after acknowledging the non-binding nature of the circuit court's sentencing inclination, and the circuit court provided sufficient reasons for its deviation from the original sentencing inclination. Therefore, we affirm the ICA's judgment on appeal affirming the circuit court's decision to deny Sanney's motion to reconsider.

To provide guidance in future cases, however, we discuss procedures trial judges should follow before providing sentencing inclinations. Furthermore, we prospectively hold that if a defendant pleads guilty or no contest in response to a court's sentencing inclination, but the court later decides not to follow the inclination, then the court must so advise the

---

[1] The Honorable Karen S.S. Ahn presided.

defendant and provide the defendant with the opportunity to affirm or withdraw the plea of guilty or no contest.

## II.  Background

### A.  From offense to sentencing

On September 22, 2010, Sanney was indicted on one count of sexual assault in the second degree in violation of Hawaii Revised Statutes ("HRS") § 707-731(1)(b)(Supp. 2009)[2] and one count of attempted sexual assault in the second degree in violation of HRS § 707-731(1)(b) and HRS § 705-500[3] (1993).

The indictment arose out of an incident that occurred in broad daylight on September 15, 2010 in Kapiolani Park.  In front of numerous eyewitnesses, Sanney allegedly cut out the shorts of an unconscious homeless woman and performed cunnilingus, then attempted vaginal intercourse with her. Shortly after, police officers arrived and awoke the unconscious

---

[2]  HRS § 707-731(1)(b) provides in relevant part, "(1) A person commits the offense of sexual assault in the second degree if: . . . (b) The person knowingly subjects to sexual penetration another person who is mentally incapacitated or physically helpless. . . ."

[3]  HRS § 705-500, titled "Criminal attempt," provides in relevant part:

> (1)  A person is guilty of an attempt to commit a crime if the person:
> (a)  Intentionally engages in conduct which would constitute the crime if the attendant circumstances were as the person believes them to be; or
> (b)  Intentionally engages in conduct which, under the circumstances as the person believes them to be, constitutes a substantial step in a course of conduct intended to culminate in the person's commission of the crime. . . .

female, who indicated she did not know Sanney.  Sanney was arrested and taken to the Oahu Community Correctional Center.

At the time of his arrest, Sanney was forty-four years old, unemployed, and homeless.  Sanney is a veteran with a history of alcohol and substance abuse issues, and had participated in a U.S. Veterans substance abuse program starting in September 2009; he was discharged in April 2010 for using marijuana. Since 1996, Sanney has had one conviction for criminal trespass in the second degree, four convictions for driving under the influence, one conviction for theft in the fourth degree, and was given a deferred acceptance of guilty plea for disorderly conduct.  Sanney also had an immigration detainer on file, and an Immigration Enforcement Agent informed state officials that Sanney would be picked up for deportation if released from state custody.

A jury trial was scheduled for Sanney, but was postponed several times.  The trial week was eventually rescheduled and Sanney, unable to post bail after his arrest, remained in custody at the Oahu Community Correctional Center.

The above information regarding the nature of the charged offenses and Sanney's background was contained in Sanney's file and available to the circuit court before his change of plea.

During his rescheduled trial week, Sanney agreed to change his plea after his attorney said the judge was inclined to

sentence him to probation with up to eighteen months in jail (of which he had already served about ten months).  There was no plea agreement with the State.  The circuit court then conducted a change of plea hearing.  Before the change of plea colloquy began, Sanney's defense attorney stated:

> Your Honor, I guess after several status conferences with the Court and, you know, talking back and forth with Mr. Sanney, this case being set for trial tomorrow morning, it's Mr. Sanney's decision to enter a guilty plea as charged, and I did relay to him that the Court has given us an inclination for probation in this case with up to 18 months in jail, and, you know, based on that inclination he's intending to change his plea.
>
> And I also did inform the Court that there is a federal hold that's been placed, currently he's facing deportation, and he understands that even if given probation, a conviction in this case will lead to automatic deportation.

At the beginning of the change of plea colloquy, the circuit court informed Sanney:

> Now, Mr. Sanney, an inclination is not a promise . . . [T]here's going to be a presentence report that's going to be generated if you decide to plead guilty today . . . I know what relatively little the lawyers have told me about the case and about your background, but it's that [presentence report] that's very important, because that's going to be a more in-depth explanation of who you are, and your history, and your characteristics and the offense.
>
> In addition, the Court would always consider what happens at the sentencing hearing -- you know the arguments; what, if anything, you have to say, and so on. So based on all of that, that's how the Court is going to make its decision on what an appropriate sentence would be. So I can tell you that's the inclination based on the representations I have.  But as you can imagine, an inclination is only as good as the representations it is based on, so you need to understand that.

Sanney responded, "I do."  After an extensive change of plea colloquy, the circuit court found that Sanney voluntarily,

knowingly, and intelligently entered no contest pleas to the charges and adjudged Sanney guilty of the charged offenses.

After the presentence investigation and report ("PSI")[4] was prepared, a sentencing hearing was held. At the hearing, the circuit court expressed concern "about some of the representations in the PSI which, to [the circuit court], [were] different from the representations that were made at the time of the change of plea and based upon which the court did give its inclination of probation with an uncertain jail term." The circuit court continued the hearing so the probation officer could be present.

---

[4]     "PSI" is the common acronym for the confidential presentence diagnosis and report prepared by judiciary probation officers pursuant to HRS § 706-602(1) (1993 & Supp. 2012), which provides in part:

> (1)  The pre-sentence diagnosis and report shall be made by personnel assigned to the court or other agency designated by the court and shall include:
> (a)  An analysis of the circumstances attending the commission of the crime;
> (b)  The defendant's history of delinquency or criminality, physical and mental condition, family situation and background, economic status and capacity to make restitution or to make reparation to the victim or victims of the defendant's crimes for loss or damage caused thereby, education, occupation, and personal habits;
> . . . .
> (e)  Any other matters that the reporting person or agency deems relevant or the court directs to be included.
> . . . .

"In enacting the Code, the legislature changed the Proposed Draft by substituting the phrase 'pre-sentence diagnosis' for the phrase 'pre-sentence investigation[.]'" HRS § 706-602 supp. Cmt. (2014). This appears to explain why the acronym is "PSI" instead of "PSD.

At the continued sentencing hearing, the circuit court's concerns focused on the following statements apparently made by Sanney to the probation officer:

> The defendant declined to provide a written statement but verbally reported that he pled no contest because he had a federal hold on him and his plea may change his deportation hold status. He said he was drunk and "high" from marijuana on the day of the offense and he is "only guilty of having sex in public." The defendant reported he and the victim drank alcohol together with other people that morning and he consumed 12 shots of vodka and two marijuana joints and wanted to sleep. He stated he and the victim walked to another area of the park to lay [sic] down and the victim eventually passed out. The defendant reported he used his scissors to cut the crotch area of her shorts so he could put his mouth on her vagina and then "humped" the victim with his clothes on. The defendant said he was "turned on" due to the fact that he was having sex in public, in daylight, and other people saw what he was doing to the victim.
> . . . .
> The defendant reported that he attended the Veterans In Progress Program, US Vets in Kapolei, Hawaii [sic], from September, 2009 [to] April, 2010. He said that he was living on the street and felt tricked into going to live at the shelter because he only wanted somewhere to live but was not willing to participate in the substance abuse program. He stated that he was rebellious and he just "went through the motions" of the substance program and smoked marijuana immediately after his graduation ceremony.

Defense counsel argued at length that the PSI did not contain anything the court did not know prior to accepting the change of plea, but did not request that Sanney be given an opportunity to withdraw his plea if the court did not follow its sentencing inclination. At the end of the sentencing hearing, the circuit court stated:

> And this is the thing about I felt tricked [sic]. You weren't willing to do the substance abuse but went through the motions and smoked marijuana immediately after graduation. That's what this says. Then I look at the four DUIs, which your attorney is right, we knew about the four DUIs. But, I mean, they do count as opportunities to do something about the problem, and, apparently, you know,

> that wasn't enough.  So the Court looks at that.  And, you
> know, it's a little bit alarming to see a statement that
> the only -- apparently there's a suggestion -- you said the
> only thing you did wrong was having sex in public and that
> it was a turn-on, which, I don't know, it conflicts with
> what you're saying today.  But you know, these are -- I
> disagree with [defense counsel].

Instead of sentencing Sanney pursuant to the stated inclination of probation with eighteen months of imprisonment, the circuit court sentenced Sanney to ten years of imprisonment on both counts, with the terms to run concurrently.

## B.   Motion to reconsider sentence and the first appeal

Following the continued sentencing hearing, Sanney filed a motion to reconsider sentence.  The only relief requested was for the circuit court to sentence Sanney to probation with eighteen months of imprisonment pursuant to its original inclination; there was no request to withdraw the plea.  A hearing was scheduled, but it was continued after Sanney's attorney withdrew and substitute counsel was appointed.  Four days before the continued hearing date, however, the circuit court summarily denied Sanney's motion without a hearing on the grounds that Sanney had not presented new evidence.

Sanney's current counsel filed the first appeal in this case, challenging the circuit court's summary denial of his motion to reconsider.  After the ICA affirmed in a summary disposition order, State v. Sanney, CAAP-12-0000654, 2013 WL 3776162 (App. July 8, 2013) (SDO), we accepted certiorari.  In a memorandum opinion, we held that under the facts of this case,

the circuit court abused its discretion in summarily denying the motion for reconsideration without a hearing, and remanded the case for a hearing on Sanney's motion.  State v. Sanney, SCWC-12-0000654, 2014 WL 3928249 (Haw. Aug. 12, 2014)(mem.).

**C.   Hearing on remand regarding Sanney's motion to reconsider sentence**

On remand, the circuit court held a hearing on Sanney's motion to reconsider sentence.  Sanney's attorney argued his client had changed his plea based on the court's stated inclination.  He insisted there was nothing significantly different between the information available at the change of plea hearing and the sentencing hearing.  Sanney himself stated that his former attorney had told him the circuit court insinuated that if he pled out, the court would "parole[] [him] to the Feds and [he] was reluctant to do that even then."  There was no request to withdraw the plea.

The circuit court discussed information it did not have at the time of the original sentencing, including defendant's statements to the probation officer summarized above.  The circuit court also provided Sanney with the opportunity to explain the statements that caused it concern.  Sanney's responses, however, did not assuage the circuit court's concerns.  The circuit court then ruled that "the sentence was a justifiable one based on the PSI and everything else that was

9

before [the court]," and denied Sanney's motion to reconsider sentence.

**D.  The current appeal and the ICA's decision**

Following the hearing, Sanney filed the current appeal. Before the ICA, Sanney argued the case should be remanded for resentencing in accordance with the circuit court's original inclination.  In the alternative, Sanney requested the opportunity to withdraw his no contest plea, a request that had not been made before the circuit court.

In a summary disposition order, the ICA affirmed the circuit court's denial of Sanney's motion to reconsider, reasoning that Sanney stated at the change of plea hearing that he understood that the court's inclination was not a promise. State v. Sanney, CAAP-15-0000548, 2016 WL 3548352 (App. June 28, 2016) (SDO) at *2.  The ICA concluded, after consideration of the reasons iterated by the circuit court at sentencing, that the circuit court did not commit a plain and manifest abuse of discretion in denying Sanney's motion.  The ICA did not address whether Sanney should have had the opportunity to withdraw his plea after the court declined to follow the sentencing inclination.

**E.  Application for writ of certiorari and oral argument**

In his application for certiorari, Sanney argues the circuit court abused its discretion in denying his motion to

reconsider sentence, and that this court should either order the circuit court to impose the sentence it had been inclined to impose before the change of plea, or allow him to withdraw his plea.  At oral argument, however, Sanney clarified that the only relief he seeks is for this court to order resentencing pursuant to the circuit court's original sentencing inclination, as requested in the motion to reconsider filed in the circuit court.  State v. Sanney, SCWC-15-0000548, Oral Argument, available at http://www.courts.state.hi.us./oral-argument-before-the-hawaii-supreme-court-scwc-15-548, at 1:05:35.

### III.  Standard of Review

Sentencing decisions are reviewed under the abuse of discretion standard.  A sentencing judge generally has broad discretion in imposing a sentence.  Generally, to constitute an abuse of discretion, it must appear that the court clearly exceeded the bounds of reason or disregarded rule of principles of law or practice to the substantial detriment of a party litigant.  State v. Hussein, 122 Hawai'i 495, 503, 229 P.3d 313, 321 (2010).

### IV. Discussion

#### A.   Sentencing Inclinations

California refers to sentencing inclinations as "indicated sentences."  In People v. Clancey, 56 Cal. 4th 562, 155 Cal. Rptr. 3d 485, 299 P.3d 131 (2013), the California Supreme Court

11

explained the differences between a plea bargain and a sentencing inclination:

> The process of plea bargaining which has received statutory and judicial authorization as an appropriate method of disposing of criminal prosecutions contemplates an agreement negotiated by the [State] and the defendant and approved by the court. Pursuant to this procedure the defendant agrees to plead guilty in order to obtain a reciprocal benefit, generally consisting of a less severe punishment than that which could result if he were convicted of all offenses charged. Judicial approval is an essential condition precedent to the effectiveness of the bargain worked out by the defense and the prosecution. Because the charging function is entrusted to the executive, the court has no authority to substitute itself as the representative of the [State] in the negotiation process and under the guise of plea bargaining to agree to a disposition of the case over prosecutorial objection.
>
> On the other hand, where the defendant pleads guilty to all charges so all that remains is the pronouncement of judgment and sentencing, there is no requirement that the [State] consent to a guilty plea. In that circumstance, the court may indicate what sentence it will impose if a given set of facts is confirmed, irrespective of whether guilt is adjudicated at trial or admitted by plea.

56 Cal. 4th at 569-70, 155 Cal. Rptr. 3d at 490, 299 P.3d at 135 (internal punctuation and citations removed).

Thus, a plea bargain is an agreement between the executive branch[5] and the defendant, which can include the reduction or dismissal of charges and/or agreements regarding sentencing. See Hawaiʻi Rules of Penal Procedure ("HRPP") Rule 11(f)(1) (2014). Pursuant to this rule, a judge is able to participate

---

[5] In Hawaiʻi, the executive branch is represented by the Attorney General or county Prosecuting Attorney offices.

in negotiations leading to a plea agreement, and may agree to be

bound.[6] Id.

In Clancey, the California Supreme Court explained the role

of the executive versus the court in sentencing proceedings:

> The charging function is the sole province of the
> executive. The executive also decides whether to engage in
> negotiations with the defense by which a more lenient disposition
> of the charges can be secured without trial-- a bargain that must
> ultimately be approved by a court.
> . . . .
> The imposition of sentence within the legislatively
> determined limits, on the other hand, is exclusively a judicial
> function. The refusal of prosecutors to consider plea bargaining
> as a viable alternative to a lengthy trial may militate against
> the efficient administration of justice, impose unnecessary costs
> upon taxpayers, and subject defendants to the harassment and
> trauma of avoidable trials. A court may alleviate this burden
> upon our criminal justice system if this can be accomplished by
> means of a permissible exercise of judicial sentencing discretion
> in an appropriate case.

Clancey, 56 Cal. 4th at 574, 155 Cal. Rptr. 3d at 493, 299 P.3d

at 138 (internal citations and quotation marks removed).

The Clancey court also laid out appropriate procedures for

trial judges regarding sentencing inclinations or "indicated

sentences":

> First, in order to preserve the executive's
> prerogative to conduct plea negotiations, a trial court

---

[6]     HRPP Rule 11(f)(1) provides:

> IN GENERAL. The prosecutor and counsel for the defendant, or
> the defendant when acting pro se, may enter into plea
> agreements that, upon the entering of a plea of guilty or
> no contest to a charged offense or to an included or
> related offense, the prosecutor will take certain actions
> or adopt certain positions, including the dismissal of
> other charges and the recommending or not opposing of
> specific sentences or dispositions on the charge to which a
> plea was entered. The court may participate in discussions
> leading to such plea agreements and may agree to be bound
> thereby.

generally should refrain from announcing an indicated sentence while the parties are still negotiating a potential plea bargain. . . .

Second, a trial court should consider whether the existing record concerning the defendant and the defendant's offense or offenses is adequate to make a reasoned and informed judgment as to the appropriate penalty.  The utility of an indicated sentence necessarily depends on the quality of the information available to the court at an early stage concerning the offense and the defendant's criminal history.

Third, a court may not offer any inducement in return for a plea of guilty or nolo contendere.  It may not treat a defendant more leniently because he foregoes his right to trial or more harshly because he exercises that right.  Because an indicated sentence is merely an instance of sentencing discretion wisely and properly exercised, the indicated sentence must be the same punishment the court would be prepared to impose if the defendant were convicted at trial.  An indicated sentence, properly understood, is not an attempt to induce a plea by offering the defendant a more lenient sentence than what could be obtained through plea negotiations with the prosecuting authority.  When a trial court properly indicates a sentence, it has made no <u>promise</u> that the sentence will be imposed.  Rather, the court has merely disclosed to the parties at an early stage -- and to the extent possible -- what the court views, on the record then available, as the appropriate sentence so that each party may make an informed decision. . . .

Fourth, a trial court may not <u>bargain</u> with a defendant over the sentence to be imposed.

56 Cal. 4th at 574-75, 155 Cal. Rptr. 3d at 494, 299 P.3d at 138-39 (internal citations and quotation marks omitted; emphasis in original).

We agree with the California Supreme Court's well-reasoned approach to sentencing inclinations.  First, absent unusual circumstances, a trial court should not provide a sentencing inclination unless plea negotiations have concluded or did not occur.  Second, before giving a sentencing inclination, a trial court should consider whether the existing record concerning the

14

defendant and the defendant's offense(s) is adequate to make a reasoned and informed judgment as to the appropriate penalty. Third, a trial court must follow the established "principle forbidding a trial court from improperly considering the defendant's exercise of his constitutional right to a . . . trial as an influential factor in determining the appropriate sentence." State v. Kamanao, 103 Hawai'i 315, 321 n.8, 82 P.3d 401, 407 n.8 (2003) (citations omitted). In other words, the sentencing inclination must be the same punishment the court would be prepared to impose if the defendant were convicted after trial. Finally, a trial court may not bargain with the defendant over the sentence to be imposed, as a trial court's sentencing inclination must be the same punishment the court would impose if the defendant were convicted following a trial. Bargaining over the sentence would contravene this requirement.

**B. The circuit court did not abuse its discretion by denying Sanney's motion to reconsider pursuant to the original sentencing inclination, because a sentencing inclination is not binding, and certain facts became available after the court issued its sentencing inclination.**

The guidance discussed above was not part of our law at the time of Sanney's change of plea, sentencing, or reconsideration of sentence, so we analyze this appeal based on governing law at the times of the trial court's decisions. Sanney argues he should have been resentenced pursuant to the circuit court's original inclination of probation with eighteen months of

imprisonment instead of the ten years of imprisonment actually imposed, because the court's stated sentencing inclination influenced his decision to change his plea to no contest.  As noted, this was Sanney's only request to the circuit court -- he did not request the opportunity to withdraw his plea.  Therefore, the only issue before us is whether the circuit court abused its discretion when it denied Sanney's motion to reconsider sentence and refused to resentence him pursuant to its original sentencing inclination.

To constitute an abuse of discretion, "it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant."  Hussein, 122 Hawai'i at 503, 229 P.3d at 321.  A sentencing inclination is not binding; it is merely a trial court's statement of the sentence it would be inclined to impose for the offense(s) charged, should the defendant be convicted after trial.  Sanney argues that the information available at the pre-sentencing hearing and the sentencing hearing was virtually identical.  As discussed above, however, the record clearly reflects that the circuit court changed its sentencing inclination based on Sanney's statements to the probation officer who was preparing the PSI.  These statements occurred after the change of plea, and comprise information not available to the circuit court at the time it

gave its sentencing inclination.  The circuit court's postponement of the sentencing hearing so the probation officer could be present to clarify the PSI evidences the importance of these statements to the circuit court's sentencing decision.

At the hearing on the motion to reconsider sentence, the circuit court provided Sanney with the opportunity to explain his statements.  Sanney's responses, however, did not assuage the circuit court's concerns.  The circuit explained how information not available at the time it gave its original inclination caused it to change its sentencing inclination and to deny the motion to reconsider sentence.

At the change of plea hearing, Sanney unequivocally stated that he understood the circuit court's sentencing inclination was not binding.  The circuit court conducted a thorough change of plea colloquy before finding that Sanney had voluntarily and knowingly entered into the change of plea.  At the hearing on the motion to reconsider sentence, the circuit court explained that it had changed its sentencing inclination based on information in the PSI that was not available at the time of its original sentencing inclination.  Therefore, the circuit court did not abuse its discretion by refusing to resentence Sanney pursuant to its original sentencing inclination, and the ICA did not err in affirming the circuit court.

**C.   Prospectively, a trial court must advise the defendant of a change in its sentencing inclination before imposing a sentence and provide the defendant with the choice of affirming or withdrawing the guilty or no contest plea.**

Although we find no error in this case, we take this opportunity to further address the sentencing inclination process to provide a new rule for application to future cases.

The American Bar Association's Criminal Justice Section historically provides guidance in the form of Standards Relating to Pleas of Guilty ("ABA Standards").  ABA Standard 14-2.1 relates to "Plea withdrawal and specific performance," and provides, in relevant part:

> (a)   After entry of a plea of guilty or nolo contendere and before sentence, the court should allow the defendant to withdraw the plea for any fair and just reason.  In determining whether a fair and just reason exists, the court should also weigh any prejudice to the prosecution caused by reliance on the defendant's plea.
> (b)   After a defendant has been sentenced pursuant to a plea of guilty or nolo contendere, the court should allow the defendant to withdraw the plea whenever the defendant, upon a timely motion for withdrawal, proves that withdrawal is necessary to correct a manifest injustice.  A timely motion for withdrawal is one made with due diligence, considering the nature of the allegations therein.
>
> (i)   Withdrawal may be necessary to correct a manifest injustice when the defendant proves, for example, that:
> . . . .
> (E) the defendant did not receive the charge or sentence concessions contemplated by the plea agreement, which was either tentatively or fully concurred in by the court, and the defendant did not affirm the plea after being advised that the court no longer concurred and after being called upon to either affirm or withdraw the plea[.]

(Emphases added.)  On its face, ABA Standard 14-2.1(b)(i)(E) applies to plea bargain agreements and not to judge-only sentencing inclinations.  The ABA Standard applies, however,

18

even when a court has not agreed to be bound, but has merely indicated a tentative inclination to follow a plea agreement, including sentencing recommendations.  Stating a tentative inclination to follow the sentencing recommendations of a plea agreement is analogous to giving a sentencing inclination without a plea agreement.  Thus, the ABA Standard can be analogized to situations where a court changes its sentencing inclination.

Various states, including Hawai'i, have adopted procedures identical to, or consistent with, the ABA Standard.  Relevant cases involve circumstances where a judge is no longer inclined to follow its original sentencing inclination, a defendant cannot as a matter of law be sentenced pursuant to a trial court's originally stated sentencing inclination, or the law has changed to allow for a more lenient sentence.  In 1967, Wisconsin adopted the ABA Standard while it was still in the tentative draft stage.  See State v. Washington, 176 Wis. 2d 205, 214, 500 N.W.2d 331, 335 (Wis. Ct. App. 1993) (noting that the Wisconsin Supreme Court "accepted the 1967 tentative draft of what is now the plea withdrawal standard, sec. 14-2.1 of the American Bar Association's (ABA) Standards for Criminal Justice (2d Ed. Supp. 1986)").  In 1930, the Supreme Court of Illinois held that where defendants changed their plea based on a judge's stated inclination offering a more lenient sentence than that

required by law, they should have been granted leave to withdraw their pleas. People v. Moore, 342 Ill. 316, 320, 174 N.E. 386, 387 (1930). In Ex parte Otinger, 493 So.2d 1362 (Ala. 1986), the Supreme Court of Alabama held that where a trial judge cannot follow its initial indicated sentence, the defendant should be afforded the opportunity to withdraw his pleas. 493 So.2d at 1364. In Cripps v. State, 122 Nev. 764, 137 P.3d 1187 (2006), the Nevada Supreme Court held that "when a judge does express an inclination to follow the parties' sentencing recommendation, the defendant must be given an opportunity to withdraw the plea if the judge later reconsiders and concludes that a harsher sentence is warranted." 122 Nev. at 771, 137 P.3d at 1191-92. The Supreme Court, Appellate Division, Second Department of New York held that "[w]here the court determines that it cannot sentence the defendant as indicated prior to acceptance of the plea, the proper procedure is to allow defendant the choice of either withdrawing his guilty plea or accepting a proper sentence[.]" People v. Grant, 471 N.Y.S. 2d 325, 327 (1984) (internal citation omitted). Finally, where a trial court granted defendant's motion to withdraw his guilty pleas to greater charges due to there being an inadequate factual basis for the pleas but denied the motion as to a lesser charge, a New Jersey appellate court held that a plea withdrawal is mandated "whenever the defendant's exposure to prison time is

dramatically reduced from what it was when a defendant entered the plea." State v. Ashley, 443 N.J. Super. 10, 23, 126 A.3d 1234, 1243 (N.J. Super. Ct. App. Div. 2015), certif. denied, 224 N.J. 526 (2016).

This court has held that a motion to withdraw plea should be granted where a defendant entered a plea based on a sentencing inclination that is legally impossible. See State v. Fogel, 95 Hawai'i 398, 405, 23 P.3d 733, 740 (2001).  ("[W]e hold that to correct manifest injustice, a defendant must be permitted . . . to withdraw a plea entered in reliance on a court's representation or promise, which is statutorily incapable of being effectuated.").

States have also applied the concept of plea withdrawal in situations where a court has changed its mind after a defendant enters a plea in reliance on a court's stated sentencing inclination.  For example, in People v. Cobbs, 443 Mich. 276, 505 N.W. 2d 208 (1993), the Supreme Court of Michigan allowed the defendant the right to withdraw his plea after the court determined a harsher sentence was appropriate:

> The judge's preliminary evaluation of the case does not bind the judge's sentencing discretion, since additional facts may emerge during later proceedings, in the presentence report, through the allocution afforded to the prosecutor and the victim, or from other sources.  However, a defendant who pleads guilty or nolo contendere in reliance upon a judge's preliminary evaluation with regard to an appropriate sentence has an absolute right to withdraw the plea if the judge later determines that the sentence must exceed the preliminary evaluation.

443 Mich. at 283, 505 N.W.2d at 212 (emphasis added).

The District Court of Appeal of Florida, First District, iterated a similar standard:

> Where[,] as here[,] a nolo contendere or guilty plea is tendered in reliance on the court's expression of sentencing intentions, and the plea is accepted, the sentencing judge must grant the defendant a clear opportunity to withdraw the plea if the judge cannot in conscience impose the sentence indicated; but that is the limit of the trial court's obligation.

State ex rel. Wilhoit v. Wells, 356 So.2d 817, 824 (Fla. Dist. Ct. App. 1978) (internal citations and quotation marks omitted; brackets added).  The court reached this conclusion in part by considering the 1968 version of the ABA Standard, Pleas of Guilty.  Id.

New Jersey has, by rule, adopted a similar plea withdrawal standard.  New Jersey Rules of Court Rule 3:9-3 titled "Plea Discussions; Agreements; Withdrawals" provides in part:

> The court may then indicate . . . the maximum sentence it would impose in the event the defendant enters a plea of guilty, assuming, however, . . . that the information in the presentence report at the time of sentence is as has been represented to the court at the time of the disclosure and supports its determination that the interests of justice would be served thereby . . . If at the time of sentencing the court determines that the interests of justice would not be served . . . by imposing sentence in accordance with the court's previous indications of sentence, the court may vacate the plea or the defendant shall be permitted to withdraw the plea.

N.J. Ct. R. 3:9-3 (emphasis added).

Finally, in Clancey, the Supreme Court of California contemplated defendant's request to adopt a rule "that when a trial court offers an indicated sentence, it must advise the defendant of the opportunity to withdraw the plea if the court

later decides not to impose the indicated sentence." Clancey, 56 Cal. 4th at 583-84, 155 Cal. Rptr. 3d at 501, 299 P.3d at 144-45.  The court ultimately declined "to resolve here which standard should govern the withdrawal of a plea after a trial court declines to impose the indicated sentence" because the trial court did not decline to follow its original inclination and the defendant did not seek to withdraw his plea.  56 Cal. 4th at 584, 155 Cal. Rptr. 3d at 501-02, 299 P.3d at 145.  The State of California acknowledged, however, the existence of California law permitting a guilty plea to be withdrawn for "good cause shown" would be given "a liberal construction . . . in the interest of promoting justice."  Id.

Hawai'i law regarding plea withdrawals is governed by HRPP Rule 32(d) (2012) and case law construing the rule.  The language in HRPP Rule 32(d) is similar to that in ABA Standard 14-2.1 and provides:

> (d) Withdrawal of Plea. A motion to withdraw a plea of guilty or of nolo contendere may be made before sentence is imposed or imposition of sentence is suspended; provided that, to correct manifest injustice the court, upon a party's motion submitted no later than ten (10) days after imposition of sentence, shall set aside the judgment of conviction and permit the defendant to withdraw the plea. At any later time, a defendant seeking to withdraw a plea of guilty or nolo contendere may do so only by petition pursuant to Rule 40 of these rules and the court shall not set aside such a plea unless doing so is necessary to correct manifest injustice.

State v. Jim, 58 Haw. 574, 574 P.2d 521 (1978), outlines the standards that govern based on whether a motion to withdraw

plea is made before or after sentencing.  These standards are similar to those reflected in the ABA Standard:

> A defendant does not have an absolute right to withdraw his guilty plea, and a motion for withdrawal of a guilty plea under [HRCP Rule 32(d)] . . . must therefore be determined under either of two established principles. Where the request is made after sentence has been imposed, the "manifest injustice" standard is to be applied. H.R.Cr.P. Rule 32(d) (now H.R.P.P. Rule 32(d)). . . .  But where the motion is presented to the trial court before the imposition of sentence, a more liberal approach is to be taken, and the motion should be granted if the defendant has presented a fair and just reason for his request and the State has not relied upon the guilty plea to its substantial prejudice.  What the manifest injustice rule seeks to avoid is an opportunity for the defendant to test the severity of sentence before finally committing himself to a guilty plea.  But the risk of prejudice to the State and to the efficient administration of criminal justice is much less apparent where the withdrawal is requested before final judicial action is taken on the defendant's plea.

Jim, 58 Haw. at 575-76, 574 P.2d at 522-23 (internal citations, quotation marks, and footnote omitted) (emphasis added).

Regarding post-sentencing plea withdrawal, when the higher "manifest injustice" standard governs, this court has held that a motion to withdraw plea should be granted when a court's stated intention to allow a deferral for which he was not eligible induced the defendant to change his plea.  Fogel, 95 Hawai'i at 405, 23 P.3d at 740.  As iterated in Jim, a more liberal standard applies to pre-sentencing plea withdrawal. Jim, 58 Haw. at 575-76, 574 P.2d at 522-23.

Based on the principles contained within ABA Standard 14-2.1, persuasive law from other jurisdictions that have addressed the issue, HRPP Rule 32(d), and our case law, we now adopt a new

rule in the sentencing inclination context, which will have prospective effect only.  See State v. Cabagbag, 127 Hawaiʻi 302, 315, 277 P.3d 1027, 1040 (2012) (holding that a new rule requiring eyewitness identification in certain circumstances would have a prospective effect only).

The new rule is as follows:  if a defendant pleads guilty or no contest in response to a court's sentencing inclination, but the court later decides not to follow the inclination, then the court must so advise the defendant and provide the defendant with the opportunity to affirm or withdraw the plea of guilty or no contest.[7]

Applying the first Jim requirement for pre-sentence plea withdrawal motions, "fair and just reasons" clearly exist when a defendant makes a pre-sentence request to withdraw plea, as the defendant's change of plea was made in reliance on the court's stated sentencing inclination.  Applying the second Jim requirement that "the State has not relied upon the guilty plea to its substantial prejudice," a defendant's guilty plea made in response to a court's stated sentencing inclination would usually not affect the State.  In any event, the new rule will

---

[7]     A defendant should be allowed to affirm and persist in the plea despite knowing the court will no longer impose the sentencing inclination upon which the defendant relied.  If the defendant chooses this alternative, however, the court should conduct a colloquy on the record establishing the defendant's knowing and voluntary decision to affirm his or her guilty or no-contest plea despite the change in the court's sentencing inclination.

encourage trial judges to consider whether the existing record concerning the defendant and the defendant's offense(s) is adequate to make a reasoned and informed judgment as to the appropriate penalty. It will also curtail hearings on motions and appeals to address whether a trial court abused its discretion by not following its originally stated sentencing inclination. This includes hearings regarding whether adequate reasons existed for the change in a trial court's sentencing inclination.[8] The new rule will also eliminate hearings and questions regarding whether a defendant truly understood the non-binding nature of a court's sentencing inclination. Finally, the new rule will foster public confidence in the judicial system, as defendants will no longer question whether they were somehow misled into entering into a change of plea based on a judge's stated sentencing inclination.

### V. Conclusion

The above-described procedures and new rule will provide guidance for future cases involving changes of plea based on a judge's stated sentencing inclination. In this case, however,

---

[8] Many discussions regarding the offenses charged and the defendant's history occur off the record, in a judge's chambers. This makes it difficult to ascertain the information on which a court relied when determining a sentencing inclination. This problem is compounded if the sentencing judge is not the same judge who gave the sentencing inclination and the information on which the inclination is based is not included in the record.

we affirm the ICA's judgment on appeal affirming the decision of the circuit court denying Sanney's motion to reconsider.

| | |
|---|---|
| Shawn A. Luiz<br>for petitioner | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| Brian R. Vincent<br>for respondent | /s/ Sabrina S. McKenna |
| | /s/ Richard W. Pollack |
| | /s/ Michael D. Wilson |

